JAMES T. GOOCH v. J. H. McGEE.

*Execution Against Corporation—What Property Subject to.*

The real estate acquired by a public corporation in exercise of a delegated right of eminent domain, and necessary for uses in which the public is concerned, cannot be sold under execution apart from the franchise and its incidents, so as to give the purchaser a title to the

property divested of all the duties and obligations assumed by the company.

(*State* v. *Rives*, 5 Ired., 297, cited and commented on.)

CIVIL ACTION to recover land, tried at Spring Term, 1879, of HALIFAX Superior Court, before *Eure, J.*

Case Agreed: In the year 1812, the legislature granted a charter to the Roanoke navigation company, under an act entitled "an act for improving the navigation of Roanoke river from the town of Halifax to the Virginia line," and a company was duly organized thereunder at a meeting of the stockholders held in the town of Halifax on the fourth Monday of October, 1815; the proceedings of which meeting were ratified by the legislature at its session of 1816. And said corporation has since fully performed and complied with the provisions of its charter and the acts amendatory thereof. On the 23d of October, 1818, a tract of land belonging to the heirs of Daniel Weldon, deceased, (of which the land in dispute is a part) was condemned under the provisions of said charter, and an act subsequently passed (1817). Said land was necessary for the purposes of the company, was then paid for and entered, and has ever since been in possession of said company. The *locus in quo* (which is particularly described in the case) is occupied by the defendant, under a lease from said company. In 1878, judgments were recovered against the company in favor of certain persons, executions issued thereon, and at the sheriff's sale in 1879, the plaintiff became the purchaser. Under the act of 1874–'75, ch. 198, an action was instituted in Halifax superior court (and is now pending) for the dissolution of the company, appointment of a receiver, &c. If upon these facts the court shall be of opinion that the plaintiff is entitled to recover, then judgment shall be rendered in his favor for the possession of the land and for costs; but if otherwise, then a judgment of nonsuit

shall be entered. The court adjudged in favor of plaintiff and ordered a writ of possession to issue, and the defendant appealed.

*Messrs. Day & Zollicoffer, Gilliam & Gatling, Mullen & Moore* and *J. B. Batchelor,* for plaintiff.
*Mr. Thos. N. Hill,* for defendant.

SMITH, C. J.   The plaintiff purchased at a sale under execution against the Roanoke navigation company, certain land which had been theretofore condemned for its use, under the provisions of the act of incorporation, including the bed covered by the waters of the canal, at its terminus near Weldon, and in this suit seeks to recover possession. The defendant had leased the land from the company for a period which had expired before the day of sale, but still continued in possession, refusing to surrender to the plainiff.

Under an act of the general assembly entitled "an act for the dissolution of the Roanoke navigation company," passed at the session of 1874–'75, ch. 198, proceedings had been instituted in the superior court of Halifax and the complaint filed, but no further action taken at the date of sale. Two objections are urged for the appellant :

1. That the proceeding to annul the corporation and dispose of its property directed by the statute supersedes and renders nugatory the interference of a creditor, and that no title passed by the sheriff's deed ; and

2. That the canal bed, as severable from its general property and franchise, is not subject to execution.

We propose to consider the last proposition first. In *State* v. *Rives,* 5 Ired., 297, a sale of so much of the road bed of the Portsmouth and Roanoke railroad company as was within the county of Northampton, under an execution at the instance of a judgment creditor, was held to be legal,

and the purchaser to have acquired title to the land.   This
was because of the assumed want of any other remedy for
the creditor, and by force of the statute which authorized a
plaintiff to sue out against a corporation debtor, " a *distringas*
or *fieri facias*, as he may think proper, and the said writs of
*distringas* or *fieri facias* may be levied as well on the current
money as on the goods, chattels, lands and tenements of the
said corporation." Rev. Stat., ch. 26, § 5.   The result of
upholding this diversion of the property from the original
and intended purposes of its condemnation to the use of the
company, and  the injustice  done the former owner, whose
damages were lessened by the advantages to be derived from
the construction of the proposed improvement, conducted
the mind of the late Chief Justice, who presided at the trial
in the superior court, to the conclusion that the sale was not
authorized by law.   In delivering the overruling opinion
in this court, RUFFIN, C. J., declaring that " the legislature
can prescribe what shall or shall not be the subject of exe-
cution," proceeds to say :  " We agree that the franchise can-
not be sold.   It is intangible and vested in an artificial
being, of a particular organization, suited in the view of the
legislature to the most proper and beneficial use of the fran-
chise, and therefore it cannot be assigned  to a person natu-
ral or artificial, to which the legislature  has not committed
its exercise and emolument," and he adds : " We regret
sincerely that it has hitherto escaped the attention of these
companies and of  the legislature, that some act was neces-
sary, in order that such sales, when unavoidable, might be
made with the least loss to the debtors and with the great-
est advantage to the creditors and purchasers, by providing
for keeping up the franchise with the estate."

The correctness of the general proposition  that the prop-
erty, real and personal, of corporations formed for the prose-
cution of  objects of  personal  benefit, as that belonging  to
individuals, may be  seized and by  sale appropriated to the

payment of its debts, does not admit of question. Between them the law makes no distinction, as has been repeatedly decided. *Maryland* v. *Bank*, 6 Gill. & John., 205; *Ev. L., &c.*, v. *Buf. Hyd. Association*, 64 N. Y., 561; *Queen* v. *Vict. Park Co.*, 41 E. C. L. R., 544. But so far as the opinion, except by force of the statute, extends the liability to the estate of corporations created for public purposes, indispensable to the exercise of the conferred franchise and to the performance of correlative duties, it is not in harmony with adjudications elsewhere of the highest authority, and we are not disposed to enlarge the sphere of its operation. Some of the cases on the subject will be noticed.

In *Ammant* v. *President, &c., Turnpike Co.*, 13 Serg. & Rawle, 210, the plaintiff bought at execution sale, "all the right, title, interest and claim," of the company, "of, in and to ten miles of its road," with specified limits, and it was held that he acquired no property by his purchase. TILGH-MAN, C. J., declaring that "the inconvenience would be excessive, if the right of the company could be cut up into an indefinite number of small parts and invested in individuals," and that the turnpike company "alone were confided in, and they alone looked to, for a faithful performance of the important duties incumbent upon them.

In *Gue* v. *Tide Water Canal*, 24 How., (U. S.) 257, execution had been levied "on a house and lot, sundry canal boats, a wharf and sundry other lots," and an injunction asked to restrain the sale. Chief Justice TANEY delivering the opinion, uses this language: "The property seized by the marshal is of itself of scarcely any value apart from the franchise of taking toll with which it is connected in the hands of the company, and if sold under this *fieri facias* without the franchise, would bring scarcely anything, but would yet, as it is essential to the working of the canal, render the property of the company in the franchise, now so valuable and productive, utterly valueless," and he adds:

"It would be against *the principles of equity* to allow a single creditor to destroy a fund to which other creditors had a right to look for payment, and equally· against the .principles of equity to permit him to destroy the value of the property of the stockholders by *dissevering from the franchise property which was essential to its useful existence.*"

In *Coe* v. *R. R. Co.*, 10 Ohio, 372, the rule is thus laid down : " When power is given to acquire an interest in real estate, for the single and exclusive purpose of the exercise of a franchise, and particularly when to acquire such interest there is a delegation of the power of eminent domain, the *interest cannot be separated from the use* to which alone it can be applied, and *if the franchise* cannot be conveyed, neither can the *interest in real estate, with which it is connected.*

.A very forcible and clear view of the subject is presented by · WOODWARD, J., in *R. R. Co.* v. *Colwell*, 39 Penn.,· 337. ": Lands bought and not dedicated to corporate purposes are bound by the lien of judgments and are liable to be levied in execution and sold by the sheriff in the same manner, and with the same effect as the lands of any other debtor.ᵖ As to land which has been·appropriated to corporate objects, and is necessary for the full enjoyment and exercise of any franchise of the company, whether acquired by purchase or by exercise of the delegated power of eminent domain, the company hold it entirely exempt from levy and sale, and this on no ground of prerogative or corporate immunity, for the company can no more alien or transfer such land by their own act than can a creditor by legal process, but the exemption rests on the public interests involved in the corporation.    For the sake of the public, whatever is essential to the corporate functions shall be retained by the corporation.    A railroad. company could scarcely accomplish the end of its being after the ground on which its rails rest had been sold to a stranger."

: "The road, with all its appurtenances," remarks SHARS-

WOOD, J., in the more recent case of *Youngman* v. *R. R. Co.*, 65 Penn., 278, " being necessary to the exercise of the franchise granted by the sale, could not be levied on and sold under execution on a judgment against the corporation."

The distinction between corporate property which can and cannot be reached by a *fieri facias* is well defined and strongly presented in the opinion of THOMPSON, C. J., in a case determined in 1868, (*Foster* v. *Fowler*, 60 Penn., 27,) in which, after discriminating between "those corporations that are agencies of the public, directly affecting it, and those which only affect it indirectly, by adding to its property in developing its natural resources or in improving its mental or moral qualities," he says : " Of the former are corporations for the building of bridges, turnpike roads, railroads, canals, and the like. The public is directly interested in the results to be produced by such corporations, in the facilities afforded to travel and the movements of trade and commerce. It is well settled that this use is not to be disturbed by the seizure of any part of their property, *essential to their active operations,* by creditors. They must recover their debts by sequestering their earnings, allowing them to progress with their undertaking to accommodate the public. This direct benefit to, and accommodation of the public clearly distinguish this class of companies from the second class, viz : private corporations, or those in which the public is but indirectly interested, such as mining and manufacturing, coal and iron companies, libraries, literary societies, schools, and the like."

In our researches we have met with a single case, (*Arthur* v. *Bank*, 9 Sme. & Mar., Miss., 394,) recognizing the authority and approving the decision in *State* v. *Rives*, and in opposition to the current of judicial opinion.

The general words of the statute, which to some extent influenced that decision may without violence to their meaning admit of a narrower scope and be restricted to the

property of private corporations, and to that of public corporations, which may be replaced and is not indispensable to the exercise of their necessary functions and the discharge of public duties, upon the distinction taken in the cases cited. But we are not required to question the correctness of the construction which so widely extends the application of the law.. It has since been amended in accordance with the suggestion of the chief justice and the very remedy pointed out has been given. The franchises of a class of corporations, to which that then under consideration belongs, with all the corporate property may now be reached and its profits applied to the satisfaction of the claims of creditors. To the section, remaining substantially unchanged, has been added the following: "And if the judgment or decree be against a railroad, or other corporation authorized to receive fare or tolls, the franchise of such corporation, with all the rights and privileges thereof, so far as relates to the receiving of fare or tolls, and also all other corporate property, real and personal, may be taken on execution and sold, under rules regulating the sale of real estate." Rev. Code, ch. 26, § 9. The amendments further provide for the manner of selling and that the sheriff shall "deliver to the purchaser possession of all the corporate property connected with the franchise belonging to such corporation in whatever county the same may be situated." §§ 10, 11.

In furtherance of the same policy of preserving intact the corporate privileges bestowed for the public benefit, it has been enacted that purchasers of the property at a mortgage sale shall *ipso facto* become a body corporate and "succeed to all such franchises, rights and privileges, and perform all such duties" as the preceding corporation possessed, except that they shall not incur liability for its obligations. Bat. Rev., ch. 26, §§ 46 and 47.

It will be observed that the subjection of the franchise to

execution is confined to such corporations as may " receive fare or tolls," leaving all others to the operation of the pre-existing law, and both acts look to the continued association of the property with the franchise. Thus the public interests remain unaffected by proceedings that result in a change of ownership merely, and a transfer of public duties from one to another party. This legislation springing out of the decision in *Rives'* case, and intended to obviate the inconveniences of a disruption of the company and the loss of those facilities for travel and transportation which it had afforded, must, we think, be deemed an expression of the legislative will, to substitute the new in place of the former remedy. It secures to creditors all their just rights, yet in subordination to the higher public demand for an unobstructed road, and without wrong to those from whom the land has been taken and appropriated to its use. It must therefore be declared that the plaintiff acquired no estate in the land by virtue of the sale and sheriff deed. It is unnecessary to pass upon the other defence. According to the case agreed, a nonsuit must be entered and it is so ordered.

Error.                                        Reversed.