## BUNCOMBE COUNTY COMMISSIONERS & Others *v.* TOMMEY & Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF NORTH CAROLINA.

Argued December 17, 1884.—Decided March 2, 1885 ; May 4, 1885.

The statutes of North Carolina of March 28, 1870, and March 1, 1873, the
first, giving a lien to mechanics and laborers in certain cases, and the
other, regulating sales under mortgages given by corporations, do not give
to those performing labor and furnishing materials in the construction of
railroads, a lien upon the property and franchises of the corporation own-
ing and operating such roads.

Ordinary lien laws giving to mechanics and laborers a lien on buildings in-
cluding the lot upon which they stand, or a lien upon a lot or farm or other
property for work done thereon, or for materials furnished in the construc-
tion or repair of buildings, should not be interpreted as giving a lien upon
the roadway, bridges, or other property of a railroad company, that may
be essential in the operation and maintenance of its road for the public
purposes for which it was established.

The proviso of the third section of the said act of 1873 (Battle's Revisal, ch.
26, § 48), has reference to the debts and contracts of private corporations
formed under the act of February 12, 1872 (Pub. Laws N. C. 1871–2, ch.
199), and not those of railroad corporations organized, for public use,
under the act of February 8, 1872.

The authority of *State* v. *Rives*, 5 Ired. 297, is questioned by the Supreme
Court of North Carolina in *Gooch* v. *McGee*, 83 N. C. 59.

The Spartanburg and Asheville Railroad Company—a cor-
poration created by the consolidation, in the year 1874, of a
railroad company of the same name, organized under the laws
of South Carolina, and of the Greenville and French Broad
Railroad Company, of North Carolina—executed, under date
of October 1, 1876, a deed of trust, whereby, for the purpose
of securing the payment of its bonds, with interest coupons
attached, it conveyed its franchises, railroad, rights, lands, and
property, real and personal, in trust for those who should be-
come holders or owners of such bonds. The deed contained
a provision by which the principal of all the bonds should be-
come due after continuous default for six months in the pay-

ment of semi-annual interest upon them, or upon any of them. Such a default having occurred in respect of the instalments of interest due January 1, 1878, the present suit was brought for the purpose of enforcing, in satisfaction of the entire amount of said bonds and coupons, the lien given by the before mentioned deed. Certain parties—Garrison, Fry & Deal, Clayton, and Rice & Coleman—were made defendants, because, as creditors of the railroad company, they claimed, respectively, a lien upon property covered by the mortgage superior to that asserted in behalf of the bondholders. Garrison alleged that, being a mechanic, he contracted, December 1, 1876, and June 2, 1877, with, and afterwards built for, the railroad company two trestles in Polk County, North Carolina, his work being completed February 18, 1878; Fry & Deal (the first named being a mechanic), that they furnished materials and work upon trestles in the same county, under a contract made with the company on June 2, 1877, and fully executed June 17, 1878; Clayton, that he performed work (grading, &c.) upon the company's road in the same county, under a contract made with it prior to the mortgage, but not executed until after its date; and Rice & Coleman, that they did work and labor, and furnished materials, on the company's road in Henderson County, North Carolina, such work beginning June 1, 1876, and ending May 1, 1878.

The decree below, ordering a sale of the mortgaged property, must have proceeded upon the ground that, under the laws of North Carolina, these defendants acquired no lien whatever upon the property of the railroad company. The contention here is, that some of the defendants acquired a lien as well under a statute passed in 1873, regulating sales under mortgages given by companies upon all their works and property, as under the act called the workmen's lien law of 1870; and that one of the defendants has a lien under the former, while others have liens under the latter statute. The main inquiry now is, whether the court below correctly interpreted those statutes. It is necessary to a clear understanding of the case that their provisions be examined in detail.

By the constitution of North Carolina of 1868, the General

Assembly of that State was required to "provide, by proper legislation, for giving to mechanics and laborers an adequate lien on the subject matter of their labor." Art. 14, § 4.

Subsequently, by an act approved March 28, 1870, entitled "An Act for the protection of mechanics and other laborers, materials," etc., it was provided that "every building built, rebuilt, repaired, or improved, together with the necessary lots on which said building may be situated, and every lot, farm, or vessel, or any kind of property not herein enumerated, shall be subject to a lien for the payment of all debts contracted for work done on the same or material furnished," § 1; that "any mechanic or citizen, who shall make, alter, or repair any article of personal property, at the request of the owner or legal possessor of such property, shall have a lien upon such property so made, altered, or repaired, for his just and reasonable charge for his work done and material furnished, and may hold and retain possession of the same until such just and reasonable charges shall be paid," etc., § 3; that "all claims under $200 may be filed in the office of the nearest magistrate; if over $200, in the office of the Superior Court clerk in any county where the labor has been performed or the material furnished," § 4; that proceedings to enforce the lien created must be commenced in the courts of justice of the peace and in the superior courts, according to their jurisdiction, § 10; and, upon judgment being rendered in favor of the claimant, an execution for the collection and enforcement thereof may issue in the same manner as upon other judgments in actions arising upon contracts for the recovery of money, § 11. Pub. Laws N. C., ch. 206 p. 253; Battle's Revisal, N. C., ch. 65, pp. 563, 564.

By a general statute, approved February 8, 1872, entitled "An Act to authorize the formation of Railroad Companies and to regulate the same," provision was made for the formation by any number of persons, not less than twenty-five, of corporations for the purpose of constructing, maintaining, and operating railroads. This statute contains sixty-six sections, and prescribes the mode in which a company may be organized under it; what its articles of association shall contain; what shall be the amount of its capital stock and in what way

subscribed; when it shall become a corporation, with the powers and privileges therein granted; to what extent its stockholders shall be liable for the debts of the company; when it shall be liable to laborers for the amount due them from contractors for the construction of any part of the road; the mode in which it may, by condemnation, acquire real estate needed for the purposes of its incorporation; an annual report to the governor showing its operations and condition in every respect; when and under what circumstances the legislature may alter or reduce its rates of freight, fare, or other profits; and many other duties respecting the operation and management of its railroad and other property. Public Laws N. C., 1871-2, ch. 138; Battle's Revisal, ch. 99, p. 727.

Corporations formed under that statute are given power to do various things, involving the raising and expenditure of money, and, also, "from time to time to borrow such sums of money as may be necessary for completing and finishing or operating their railroad, and to issue and dispose of their bonds for any amount so borrowed, and to mortgage their corporate property and franchises to secure the payment *or* [of] any debt contracted for the purposes aforesaid," &c. The statute further declares that "all existing railroad corporations within this State shall respectively have and possess all the powers and privileges" therein specified.

On the 12th of February, 1872, the General Assembly of North Carolina passed another statute providing for the formation of "private corporations for any purpose not unlawful" by three or more persons. Pub. Laws N. C., 1871-2, ch. 199.

At its subsequent session an act was approved, March 1, 1873, entitled "An Act to regulate mortgages by corporations, and to regulate sales under them." As the present case depends largely upon the construction to be given to the provisions of that statute, its first and third sections (the second and other sections being immaterial in the determination of any question here involved) are given entire, as follows:

"SEC. 1. If a sale be made under a deed of trust or mortgage executed by any company on all its works and property, and there be a conveyance pursuant thereto, such sale and con-

veyance shall pass to the purchaser at the sale not only the works and property of the company as they were at the time of making the deed of trust or mortgage, but any works which the company may, after that time and before the sale, have constructed, and all other property of which it may be possessed at the time of the sale other than debts due to it. Upon such conveyance to the purchaser the said company shall, *ipso facto*, be dissolved, and the said purchaser shall forthwith be a corporation by any name which may be set forth in the said conveyance, or in any writing signed by him and recorded in the same manner in which the conveyance shall be recorded."

"Sec. 3. When such corporation shall expire or be dissolved, or its corporate rights and privileges shall have ceased, all its works and property and debts due to it shall be subject to the payment of debts due by it, and then to distribution among the members according to their respective interests; and such corporation may sue and be sued as before for the purpose of collecting debts due to it, prosecuting rights under previous contracts with it, and enforcing its liabilities and distributing the proceeds of its works, property, and debts among those entitled thereto: *Provided*, That all debts and contracts of any corporation, prior to or at the time of the execution of any mortgage or deed of trust by such corporation, shall have a first lien upon the property, rights, and franchises of said corporation, and shall be paid off or secured before such mortgage or deed of trust shall be registered." Pub. Laws N. C., 1872–73, ch. 131; Battle's Revisal, ch. 26, §§ 46, 48, pp. 269, 270.

*Mr. Solicitor General* for appellants.

*Mr. William E. Earle* (*Mr. James H. Rion* w  ʼit    m) for appellees.

Mr. Justice Harlan delivered the opinion of the court. He recited the facts as above stated, and continued :

The first question to be considered is whether the act of 1870 gives a lien to mechanics or contractors upon the property of a railroad corporation, for work performed or materials fur-

nished in and about the construction of its road, or of its bridges constituting a part of its line. We are of opinion that no such statutory lien exists in North Carolina, or was intended to be given by the act of 1870. In reaching this conclusion, we are not aided by any direct decision of the question by the Supreme Court of North Carolina. Reference was made by counsel to *Whitaker* v. *Smith*, 81 *N. C.* 340, where it was held that an overseer is not entitled, under that act, to a lien, for his wages, upon the employee's crop or land over which he has superintendence. After alluding to the constitutional requirement that laws be enacted to give to mechanics and laborers an adequate lien on the subject matter of their labor, the court said : " A very large proportion of the laboring population of the State had just recently been released from thraldom, and thrown upon their own resources, perfectly ignorant of the common business transactions of social life, and this provision of the Constitution, and the acts passed to carry it into effect, were intended to give protection to that class of persons who were totally dependent upon their manual labor for subsistence. The law was designed exclusively for mechanics and laborers." If such be the effect of the act of 1870, there is strong reason to hold that a mere contractor for the construction of a railroad, or of railroad bridges, is not entitled to the lien given by it. But, without accepting as conclusive an opinion delivered after the rights of the parties had become fixed, *Burgess* v. *Seligman*, 107 U. S. 20, 33, we rest our interpretation of the statute upon the ground that it has no reference to work done or materials furnished in the construction of railroads. The words of the act are scarcely adequate to express a purpose to give a lien upon a public improvement of that character. The words " building," " lot," " farm " and " any kind of property not herein enumerated " are too limited in their scope to justify the conclusion that the legislature had any intention, by that act, to give a lien upon railroad property. This view is strengthened by the circumstance that, by the subsequent act providing for the organization of railroad companies and regulating their affairs, no saving is made of liens in behalf of mechanics and laborers, and express power is given to such corporations to

borrow, from time to time, any sums necessary for completing and furnishing or operating their railroads upon bonds secured by mortgage upon their corporate property and franchises. Indeed, the idea of a lien in favor of laborers actually performing work in the construction of a railroad seems to have been intentionally excluded; for, when the railroad contractor fails to pay such laborers, the company, upon notice, may become bound to do so; but no lien is given therefor upon the property of the corporation.

Apart, however, from these considerations, we are of opinion that a law, giving to mechanics and laborers a lien on buildings, including the lot or ground upon which they stand, or a lien upon a lot or farm or other property, for work done thereon, or for materials furnished in the construction or repair of buildings, should not be interpreted as giving a lien upon the roadway, bridges, or other property of a railroad company, that may be essential in the operation and maintenance of its road. In North Carolina, as in most, if not in all the States, railroads, although constructed for the private emolument of those engaged in such enterprises, are highways which have been established, under the authority of law, primarily for the convenience and benefit of the public. The general statute of February 8, 1872, authorized the formation of corporations to construct, maintain, and operate railroads "for public use in the conveyance of persons and property, or for the purpose of maintaining and operating any unincorporated railroad already constructed for the like public use." Battle's Revisal, ch. 99, § 1. The pecuniary profit derived by those who project and operate them is the reward which they receive for maintaining a public highway. Municipal taxation to aid in their construction has been maintained only upon the ground that they are, in a large sense, instrumentalities or agencies for the purpose of accomplishing public ends. Upon that ground rests the authority of the State to invest them with the right of eminent domain in the condemnation of private property, and to prescribe from time to time, in the interest of the public, reasonable regulations for their control and management. *Taylor* v. *Ypsilanti*, 105 U. S. 60, 68-9. Such being the relations exist-

ing in North Carolina between these corporations and the public, it should not be presumed that the legislature intended to subject them to the operation of ordinary lien laws, enacted for the benefit of those performing labor and furnishing materials in the construction, repair, or improvement of what the statute of 1870 designates as buildings, or who perform labor upon lots, farms, and other property, belonging to private persons, and having no connection with public objects. A different construction of the statute would enable parties having liens for amounts, within the jurisdiction of justices of the peace, to destroy a public highway, and defeat the important objects which the State intended to subserve by its construction. No such intention should be imputed to the legislature, unless the words of the statute clearly require it to be done.

There is nothing, it may be observed in this connection, in *Brooks* v. *Railway Co.*, 101 U. S. 443, in conflict with the views here expressed. The decision in that case rests upon the construction given to the mechanics' lien law of Iowa by the Supreme Court of that State. Besides, the Iowa statute, in terms, included, among those entitled to the lien it gave, "contractors, sub-contractors, material furnishers, mechanics, and laborers engaged in the construction of any railroad or other work of internal improvement." Iowa Rev. Stat., 1860, § 1846. The legislative will was there expressed so clearly as to leave no room for interpretation of the statute.

It is, however, contended that the proviso of the third section of the act of March 1, 1873, is sufficient to sustain the lien asserted by such of the appellants as were contractors and mechanics. That act, as we have seen, regulates sales under deeds of trust or mortgages "executed by any company on all its works and property," and provides for the purchaser becoming a corporation, with all the franchises, rights, and conveyances of, and subject to the duties imposed upon, the original corporation. In connection with a general provision for the disposition of the assets of corporations which shall expire or be dissolved, or whose corporate rights and privileges shall cease, it is declared "that all debts and contracts of any corporation, prior to or at the time of the execution of any mort-

gage or deed of trust by such corporation, shall have a first lien upon the property, rights, and franchises of said corporation, and shall be paid off or secured before such mortgage or deed of trust shall be registered."

It must be admitted that the broad language of this act gives some support to the proposition that it was intended to apply to all corporations, including those formed for the construction and operation of railroads. But there are reasons of great weight that have brought us to the conclusion that such is not its proper interpretation. The language of the proviso in question is fully satisfied by restricting its operation to merely private corporations, which may be formed by three or more persons. And to this may be added the important consideration, that any other interpretation might defeat the express power given to railroad corporations to raise money for completing and finishing or operating their roads, upon bonds to be secured by mortgage upon their property and franchises; for, such bonds, in the very nature of things, could not be readily, if at all, disposed of, if the lien given by the railroad mortgage is subordinate to a lien for "*all* debts and contracts," of whatever nature, "existing prior to and at the time of the execution" of such mortgage. Did the legislature intend that the power of a railroad corporation to mortgage all of its property and franchises for money with which to complete or operate a road for public use should be exercised, subject to the condition that every creditor it had at the time of the mortgage, no matter how his debt originated, nor whether there was an agreement for a lien, should have a first lien upon the corporate property and franchises? If this construction should be adopted, it would follow that mechanics and laborers would acquire, as between them and the holders of mortgage bonds, a first lien for work done or materials furnished to the railroad company without filing a claim therefor, as required by the act of 1870; and this, although the legislature had in that act refrained from using language that necessarily gives them a lien upon railroad property and franchises. We are of opinion that the proviso of the third section of the act of 1873 has no application to deeds of trust or mortgage given by railroad corporations.

This view is strengthened by the history of the compilation
of the statutes of North Carolina, known as Battle's Revisal.
At the same session of the legislature at which the railroad
act of 1872 and the private corporation act of the same year
were passed, another statute was enacted providing for the
publication of the public statutes under the supervision of Wm.
H. Battle, who was directed " to collate, digest, and compile
all the public statute laws of the State," distributing them
under such titles, divisions, and sections as he deemed most
convenient and proper to render them "more plain and easy
to be understood." Acts N. C., 1871–2, p. 373. His revision
was reported to the legislature in 1873, and was formally ap-
proved, to take effect January 1, 1874. Upon looking into that
revision, we find that the act of 1872, relating to private cor-
porations, and that of 1873, in reference to sales of property
under deeds of trust or mortgages executed by " any company
on all its works and property," are consolidated, in one chap-
ter, under the title of "Corporations" simply; the former
constituting §§ 1 to 44, inclusive, of that title, and the
latter act constituting §§ 45 to 49, inclusive; while the act
of 1872, in reference to railroad corporations, organized for
public use, is placed under the separate title of " Railroad
Companies." We have thus what may, not unreasonably, be
regarded as a legislative indication of the original purpose of
the act of 1873, viz., to make provision for sales of property
covered by deeds of trust or mortgages executed by merely
private corporations, formed by three or more persons, leaving
the rights of parties, in respect of like instruments executed by
railroad companies organized for public purposes, subject to
the terms of those instruments and the general principles of law.
While Mr. Battle had no power, by any mode of revision, to
change the words, or to modify the meaning, of the statutes
themselves, *Sikes* v. *Bladen,* 72 N. C. 34; *State* v. *Cunning-
ham,* 72 N. C. 469; *State* v. *Taylor,* 76 N. C. 64, he had au-
thority to arrange them under their appropriate titles; and,
when the legislature approved his placing the act of 1873 in
direct connection with that of 1872, relating exclusively to
private corporations, that fact is not without weight in deter-

mining the scope and effect of the original act of 1873. This circumstance would be entitled to very little weight, if the language of the last-named act necessarily embraced all corporations, public and private, and was not, as we have said, fully satisfied by restricting its operation to private corporations, as indicated by the revision in question.

In view of what has been said, the issue made by the County of Buncombe, as a stockholder of the company, in reference to Inman's conduct as trustee, need not be examined. Upon the facts disclosed, the county does not seem to be in any position to question the decree in favor of the appellees. There is no error in the record, and the decrees are

*Affirmed.*

*Mr. Solicitor General,* on behalf of the plaintiffs in error thereupon filed a petition for a rehearing, accompanied by a brief, citing *State* v. *Rives,* 5 Ired. 297, *Gooch* v. *McGee,* 83 N. C. 59, to the contention that the general lien law of North Carolina of 1868, created a lien upon the railroad, to be enforced by judgment and execution. In the latter case, he said, will be found a sketch of the executions at law now valid in that State. The policy which prevails in connection with judgments for unsecured debts, protects as well judgments upon debts previously secured by lien ; and the fact that certain liens can bear their fruit only in the way that unsecured debts do is a complete answer to a suggestion that these liens are against the public policy of the State which appears to grant them. The lien law operates in this instance but as it does in others, *i. e.,* only in the anterior security which it affords. It follows that if the general words of the lien statute would otherwise cover the case of all debtors owning real estate, there is nothing in the character of the fruit of the lien to indicate a public policy to exclude therefrom such debtors as are railroad companies. It is, of course, according to public policy in North Carolina that debtor railroad companies, upon failing to pay, &c., shall be sold out at law in the way referred to in 83 N.C., cited above. In common cases, therefore, an unsecured creditor of a railroad company would sue, and, having obtained judg-

ment, would then create a lien by duly docketing this, and in the end, avail himself of the statutory method of execution sale. The creditor for work, who had availed himself of the formal provisions of the lien act of 1868, could do no more than also sue and obtain judgment and have the same statutory sale.

It is submitted, therefore, in the first place, that the act of 1868, by adding after certain enumerations the words: "or any kind of property not herein enumerated, shall be subject to a lien for the payment of all debts contracted for work done on the same or materials furnished," includes property owned by railroad companies.

2. The act of 1872, in its enforcement, would probably be regulated by the provisions in the act of 1868. In any event it operates upon railroad companies as well as upon other corporations. The language of the act is "That all debts and contracts of any corporation, prior to or at the time of the execution of any mortgage or deed of trust by such corporation, shall have a first lien upon the property, rights, and franchises of said corporation, and shall be paid off or secured before such mortgage or deed of trust shall be registered." It was argued before that inasmuch as the Legislature of North Carolina in 1871–2 had passed two statutes, one upon Corporations and the other upon Railroad Companies, the circumstance that an act passed by the next legislature was entitled Corporations indicated that it was intended as an amendment of the former of the two acts of 1871, and that this presumption is fortified by the circumstance that in Battle's Revisal the act of 1872 is incorporated into that former act. As regards the influence of Battle's Revisal upon the present question, the facts are that the act was passed at the same session that the Revisal was reported, and that it was incorporated therein after the session had ended under directions affecting all the legislation of that session. See Battle's Revisal, p. 863, top, passage beginning: "In the volume shall also be published the acts of a public and general nature passed at this session, and not included in the Revisal," &c. That act is ch. 74 of the session, whilst the act upon which the reviser's arrangement is supposed to have effect was enacted afterwards, being chapter 131. It will thus

appear that the general approving clauses of the previous act, therefore, did not operate upon the latter. It was not yet in existence, and its special position in the Revisal is the work of the reviser alone. The action of the reviser upon the later acts of that session, incorporating, arranging, &c., has never been passed upon by the Legislature. Even as regards acts passed before that session, and revised therein, the Supreme Court has reduced the authority of the Revisal to nothing for any matter in which it purports to modify previous laws.

It is submitted, therefore, that its arrangements of acts and provisions adopted at that session must, *a fortiori*, be to no purpose whatever, as ground for arguing upon the meaning of such provisions.

Work incorporated into a railroad track, and thus making the mortgaged property more valuable, raises, in point of reason, as much equity against the mortgagee as against the mortgagor. Whoever gets the benefit of that mingling of labor and land should, upon first principles, take it *cum onere*, unless he purchases for value without notice; and the circumstances under which the labor is done, or fact that the lien therefor is recorded, makes provision for that exceptional case.

Mr. Justice Harlan delivered the opinion of the court.

In the opinion in this case it was stated that in North Carolina, as in most, if not in all, the States, railroads, although constructed by private persons or corporations for their own emolument, are highways, established under the authority of law, primarily for the benefit of the public. For that reason, in the absence of an express statutory declaration to the contrary, we were not willing to presume that the legislature of that State intended to subject railroads within her limits, and established by her authority, to the operation of ordinary lien laws; for, such a construction of her statutes would enable creditors to enforce their liens upon distinct portions of a railroad, and thereby easily destroy a highway and defeat the important public objects intended to be subserved by its construction. The petition for rehearing suggests that the court is in error as to the policy of the State with reference to the

seizure of railroad property by execution or other process, and we are referred, upon this point, to *State* v. *Rives*, 5 Ired. 297, and *Gooch* v. *McGee*, 83 N. C. 59, authorities not heretofore cited by counsel.

In the first of these cases it was decided that, under the law of North Carolina as it then was, the writ of *fieri facias* lay against the land on which a railroad is laid out. In support of that view reference was made to an act passed in 1820. But, from the decision in *Gooch* v. *McGee*, determined in 1880, it is apparent that the court was not satisfied with the correctness of that decision; for, it said that, " so far as the opinion, except by force of the statute, extends the liability to the estates of corporations for public purposes, indispensable to the exercise of the conferred franchise and to the performance of correlative duties, it is not in harmony with adjudications elsewhere of the highest authority, and we are not disposed to enlarge the sphere of its authority." After citing several adjudged cases, including *Gue* v. *Tide Water Canal*, 24 How. 257, the court proceeds: " In our researches we have met with a single case (*Arthur* v. *Bank*, 9 S. & M. 394) recognizing the authority and approving the decision in *State* v. *Rives*, and in opposition to the current of judicial opinion. The general words of the statute, which to some extent influenced that decision, may, without violence to their meaning, admit of a narrower scope, and be restricted to the property of private corporations, and to that of public corporations which may be replaced and is not indispensable to the exercise of their necessary functions, and the discharge of public duties, upon the distinction taken in the cases cited." It is difficult to resist the conclusion that the Supreme Court of North Carolina intended, by their opinion in *Gooch* v. *McGee*, to intimate that *State* v. *Rives* was wrongly decided, even with reference to the statutes in force when (1844) the latter case was determined.

It is suggested that § 9, ch. 26 of the Revised Code of North Carolina, adopted in 1855, indicated a public policy in that State in harmony with the decision in *State* v. *Rives;* for, it is claimed, by that section, the franchises and property of railroad corporations having the right to receive fare or tolls may be

taken on execution.   Upon this point it is sufficient to say, that we are not satisfied that the statutory provision referred to, as being a part of the Code of 1885, was in force after Battle's Revisal was adopted.   By express enactment, " all acts and parts of acts passed before " the session of the legislature which directed the publication of Battle's Revisal, " the *subjects whereof* are digested and compiled " in that revisal, or which were " repugnant to the provisions thereof," were declared to be repealed and of no force or effect from and after the 1st of January next thereafter, with certain exceptions and limitations, not embracing the present case.   *Battle's Revisal,* p. 861. Independent, however, of this question, and even if § 9, ch. 26 of the Code of 1855 be in force, we adhere to the opinion that there was no purpose, by the act of 1870, to give a *lien* upon the property of a railroad corporation for work performed or materials furnished in and about the construction of its road, or of its bridges constituting a part of its line.

In the original opinion we were in error in supposing that the act of 1873 was passed at a session previous to that at which the act was passed approving Battle's Revisal, and directing its publication under the supervision of the compiler. Both acts, it seems, were passed at the same session.   The incorporation of the act of 1873 into that part of the Revisal which related to private corporations was, therefore, the work of Mr. Battle and not in pursuance of any previous express direction by the legislature.   Making this correction in the statement of a fact to which we attached but little weight in our interpretation of the act of 1873, we perceive no sufficient ground for extending its provisions to the property of corporations operating a public highway.

*The rehearing is denied.*