PENNSYLVANIA STEEL CO. v. J. E. POTTS SALT & LUMBER CO. et al.

(Circuit Court of Appeals, Sixth Circuit. July 3, 1894.)

No. 196.

MECHANICS' LIENS—CONSTRUCTION OF RAILROAD.

Acts Mich. 1885, p. 293, § 1, giving one who builds any house, building, machinery, wharf, or structure a lien thereon, and on the lot or piece of land, not exceeding a quarter section, or, if in an incorporated village, not exceeding the lot on which the improvement is made, does not give a lien for the materials used in the construction of a railroad.

Appeal from the Circuit Court for the Eastern District of Michigan.

Suit by the Pennsylvania Steel Company against J. E. Potts Salt & Lumber Company and others to enforce a lien. Decree for defendants. Complainant appeals. Affirmed.

The J. E. Potts Salt & Lumber Company was a corporation organized under the laws of Michigan for the purpose, among others, of carrying on a lumber and logging business in that state. Incident to such business, it owned or was interested in extensive tracts of land in the counties of Oscoda, Iosco, Alcona, and Ogemaw, on which it carried on its operations. For the purpose of facilitating the getting out of the timber from the woods to a convenient place for manufacture and shipment, it caused to be organized the Potts Logging Railway Company, under the train railway act, being No. 148 of the Laws of Michigan of 1855, and that company built a railroad from Au Sable to Potts, a distance of 37 miles, and from thence constructed spurs of track in various directions into the different locations from which the logs were to be taken. These spurs were in the main temporary constructions, and were taken up and moved to other locations when the special purpose had been subserved or the exigencies of the business required. The entire property of the railway company in fact and in substance belonged to the Salt & Lumber Company, but, while the principal purpose and business of the railway company was to act as an auxiliary of the Salt & Lumber Company, it yet engaged in the carriage of mails and passengers in the ordinary modes of railway business. In August, 1890, the complainant, the Pennsylvania Steel Company, under a contract with the Salt & Lumber Company, furnished 500 tons of steel rails, together with their fastenings, for the use of the Logging Railway Company, and to be laid on its roadbed.

This material was so used, being laid principally on the spurs above referred to. The agreed price therefor was $19,040.44. Soon after that date, the Salt & Lumber Company became embarrassed, and was unable to, at least did not, pay this debt. On March 6, 1891, the Pennsylvania Steel Company filed its claim of lien on the railroad and the lands on which it was laid, in the register's office in each of the counties of Oscoda, Iosco, Alcona, and Ogemaw, for the price of the material so furnished. The railroad is therein described as extending from Au Sable to Potts, and through or over a strip of land 100 feet or more in width, across certain townships of given numbers and ranges. No other or more definite description of the land was given in this statement of lien. Questions of title and ownership of the lands sought in this proceeding to be subjected to the complainant's claim of lien are involved, but, in the view taken of the main question decided, it is not material to detail a statement of them. On the 27th of November, 1890, on a bill filed in the state circuit court for Wayne county by certain defendants in the present suit against the Bank of Montreal and other mortgagees of the Salt & Lumber Company, the defendants Harmon and Tisdale were appointed receivers of the property covered by the mortgages. These mortgages had been given prior to the creation of the debt to complainant, on the lands on which the complainant asserts its lien. In July, 1891, the receivers sold the property to another defendant herein, the Au Sable & Northwestern Railway Company, with a guaranty against the complainant's claim. On the 29th day of November, 1890, the Salt & Lumber Company made a general assignment for the benefit of their creditors, and, the designated assignees having declined, Harmon and Tisdale were appointed assignees by the Wayne county circuit court. The present complainant, having obtained leave from the state court, filed its bill in the United States circuit court for the eastern district of Michigan against the receivers and assignees above named, joining the other parties in interest as defendants. The cause afterwards came on to be heard upon pleadings and proofs. The circuit court, being of opinion that the lien claimed by the complainant was not sustainable under the laws of Michigan, dismissed the bill, and the complainant brings the case here by appeal.

Bowen, Douglas & Whiting, for appellant.
Alfred Lucking, for appellees.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

SEVERENS, District Judge, having made the foregoing statement of the case, delivered the opinion of the court.

The statutes of Michigan have, from the time when it was a territory, afforded to those furnishing labor or materials in the construction of buildings on the lands of others a lien for the price and value thereof on the land itself. By successive enactments, the scope of provision for the creation and enforcement of such liens has been considerably extended. At the time when the materials were furnished and the proceedings were taken in the present case to enforce a lien therefor, the act of 1885, found at page 293 of the Session Laws of that year, was in force; and the principal question to be determined is whether that act is broad enough to entitle the complainant to a lien in the circumstances shown by the record in the case. Section 1, upon which the question turns, provides as follows:

"Every person who shall, in pursuance of any contract, express or implied, existing between himself as contractor, and the owner, part owner, lessee, or person holding under any land contract or otherwise, any interest in real estate, build, alter, improve, repair, erect, beautify or ornament, or put in, or

who shall furnish any labor or materials in and for building, altering, improving, repairing, erecting, beautifying or ornamenting, or putting in, any house, building, machinery, wharf or structure  *  *  *  shall have a lien therefor upon such house, building, machinery, wharf or other structure and its appurtenances, and also upon the entire interest of such owner, part owner, lessee or person holding under land contract or otherwise, in and to the lot or piece of land, not exceeding one-quarter section of land, or if in any incorporated village, not exceeding the lot or lots upon which said improvement is made to the extent of the right, title and interest of such owner," etc.

The industry of counsel for both parties, of which there is abundant evidence in their briefs, has not discovered any decision of the supreme court of the state especially adapted to aid us in the construction of this statute, and recourse has been had to decisions in the federal courts and in other state courts upon statutes more or less similar to that of Michigan. In the absence of any controlling decision in the state court, the case of Commissioners v. Tommey, 115 U. S. 122, 5 Sup. Ct. 626, 1186, may be regarded as a leading authority in the solution of the question involved. That case involved the construction of the statute of North Carolina, which enacted that "every building built, rebuilt, repaired or improved, together with the necessary lot on which said building may be situated, and every lot, farm or vessel, or any kind of property, real or personal, shall be subject to a lien," etc. The bill was filed for the purpose of foreclosing a mortgage upon a railroad, and some of the defendants claimed liens for labor and materials furnished in its construction. But it was held by the supreme court that the language of the act was not adequate to express an intention to give a lien upon a public improvement of that character. In the words of the act then under consideration, there was no such limitation as that found in the Michigan statute in respect to the amount of the land made subject to the lien. The conclusion there reached strongly negatives the construction which the complainant seeks to impose upon the section of the act in question. By the statute of Ohio, a lien was given for labor and materials upon "any house, mill, manufactory or other building, appurtenances, fixtures, bridge or other structure and on the interest of the owner of the same, in the lot of land on which they stand, or may be removed to." In the case of Rutherfoord v. Railroad Co., 35 Ohio St. 559, the supreme court of that state had occasion to construe their statute upon proceedings taken to enforce a lien for materials furnished for the construction or repair of a railroad. It was held that the statute could not be extended to include a railroad. It was admitted that a railroad was a "structure," in a general sense, but that, giving effect to the implications to be drawn from the context, it could not be held to be such within the intention of the legislature; and it was said, among other things, that to call a strip of land for a right of way for a railroad from Cincinnati to Portsmouth a "lot of land" would be a misnomer. The statute of Kentucky provides a lien for "erecting, altering or repairing a house, building or other structure  *  *  *  or for an improvement in any manner of real estate." In Graham v. Railway Co., 14 Bush, 425, it was held that this language did not include a railroad. A like decision was made

by the supreme court of Texas in Railroad Co. v. Driscol, 52 Tex. 13, upon a statute providing "that any person or firm, lumber dealer, artisan or mechanic who may labor or furnish material, machinery, fixtures and tools to erect any house, improvement, or to repair any building or any improvement whatever, shall have a lien thereon and shall also have a lien on the lot or lots of land necessarily connected therewith." A similar opinion, upon a statute with like restrictions, was expressed in Railroad Co. v. Vanderpool, 11 Wis. 124, with reference to a railroad bridge.

Contrasted with the foregoing decisions are several which are cited by counsel for appellant upon statutes of a somewhat different character. In the case of Giant Powder Co. v. Oregon Pac. Ry. Co., 42 Fed. 470, the court had under consideration the statute of Oregon, which gave a lien for "furnishing material to be used in the construction, alteration or repair, either in whole or in part, of any building, wharf, bridge, ditch, flume, tunnel, fence, machinery or aqueduct, or any other structure or superstructure." The bill was filed to enforce a supposed lien on the defendant's railroad for explosives furnished in aid of its construction. Upon the construction which the court put upon the language of the act, the lien was sustained. That case is much relied upon by counsel as supporting his contention for a lien in this. But the drift of the discussion by Judge Deady tends rather to defeat than to support the complainant here. Referring to the statute, he says: "If the language of the act was 'building or other structure' only, then it might not be construed as including a railroad; but the words 'a ditch or any other structure' cannot be held to exclude a railroad." He quotes and applies the maxim of construction "noscitur a sociis," and from such application it appeared plainly that the words "or any other structure," following immediately such words as "ditch, flume, tunnel, aqueduct," were intended to include structures of a similar character. It was by the application of the same maxim that the supreme court of Ohio, in the case before referred to, held that the word "structure," interpreted by reference to the more restricted words in their statute, did not include railroads. Indeed, it would seem that the application of this rule of construction has been quite generally decisive of the interpretation to be given to the general words in these statutes. The supreme court of Oregon, in Forbes v. Electric Co., 19 Or. 61, 23 Pac. 670, held that under their act (already quoted) a lien could be maintained for the labor involved in the erection of poles and stringing the wires for an electric light plant. The court was of opinion that, in view of the phraseology of the act, the poles and wires were part of a structure. This is in harmony with the decision of Judge Deady in 42 Fed. 470. The case of Helm v. Chapman, 66 Cal. 291, 5 Pac. 352, is also cited. That was a proceeding to foreclose a lien upon a mining claim for work in quarrying rock and working in slopes and leads in the operation and improvement of the mine. The court held that the mine was a "structure," within the meaning of the California statute, which gave a lien "for performing labor or furnishing materials to be used in the construction, alteration or repair of any building,

wharf, bridge, ditch, flume, aqueduct, tunnel, fence, machinery, railroad, wagon road or other structure." There it will be observed that the words in context with the term "other structure" were very widely inclusive. In Central Trust Co. v. Sheffield & B. Coal, Iron & Ry. Co., 42 Fed. 106, it was held by the United States circuit court in Alabama that the words of the statute there, giving a lien "for any building or improvement on land," were wide enough to include a coal mine, and that coal cars furnished for use therein were materials for the improvement. The case of Neilson v. Railway Co., 44 Iowa, 71, does not furnish much aid, as railroads were expressly subjected to liens by the laws of Iowa. The Iowa statute was also under examination in the case of Brooks v. Railway Co., 101 U. S. 443, referred to in 115 U. S., at page 129, and 5 Sup. Ct. 626, 1186, where it is said, quoting the express terms of the act: "The legislative will was there expressed so clearly as to give no room for interpretation." The other cases cited by counsel for complainant are: Ex parte Schmidt, 62 Ala. 252; Dewitt v. Smith, 63 Mo. 263; Taggard v. Buckmore, 42 Me. 77; Buchanan v. Smith, 43 Miss. 90; Weathersby v. Sinclair, Id. 189; Putnam v. Ross, 46 Mo. 337; Bullock v. Horn, 44 Ohio St. 420, 7 N. E. 737. We have examined them all, but find none of them more in point than those already considered.

In most of the statutes of the several states, the subject of the lien is localized within restricted limits; in others, it is of an extended character; and in some, railroads are expressly mentioned. We are not disposed to question the proposition that such statutes, though they are in contravention of the common law, should be fairly and liberally construed; but we cannot extend them beyond the bounds of the purpose of the legislature, as gathered from the words employed. Upon general principles of construction, we do not think that the words "other structure," following, as they do, in the Michigan statute, such limited and localizing words as "house, building, machinery, wharf," can reasonably be held to include a railroad. This conclusion appears to us to be strongly fortified by the restriction of the lien in the latter part of the section to "the lot or piece of land not exceeding one quarter section of land, or if in a village not exceeding the lot or lots" on which the improvement is made. Giving all these considerations their just weight, it seems clear to us that the complainant has no lien, and therefore that his suit must fail.

It is suggested by counsel for complainant that the statute gives an independent lien upon the "structure," and a further one upon the land upon which it is built. We do not find it necessary to decide this point, or whether, if it is well taken, the statement of lien which was filed would support the claim of a lien upon the material composing the structure; for we are of the opinion that the structure for which the complainant furnished the material is not such a one as the statute contemplates, and it is only for material furnished for such a purpose that a lien is afforded. The result of these views is in accordance with the conclusion of the court below, and its decree is therefore affirmed.