**PITTSBURG EQUITABLE METER CO.**
**v. CARY.**

No. 828.

Circuit Court of Appeals, Tenth Circuit.

Sept. 5, 1933.

Charles Hill Johns and J. C. Monnet, Jr., both of Oklahoma City, Okl., for appellant.

Streeter B. Flynn, of Oklahoma City, Okl. (Albert C. Hunt and Rainey, Flynn, Green & Anderson, all of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

KENNEDY, District Judge.

This suit was brought by appellant as intervener in a receivership proceeding, against the appellee receiver to foreclose a purported lien growing out of a contract through which the appellant furnished materials and supplies in the construction and equipment of a gas distribution and transmission plant and system, said materials consisting of gas meters which were installed in said plant constructed and to be operated by the Western Service Corporation in the city

of Guthrie, Okl. The materials were sold upon an open account, and within the time provided by the lien statute of the state of Oklahoma the appellant filed a lien and by leave of the court in the receivership proceeding sought to foreclose the same. The receiver filed his answer admitting the account of the appellant but denying that the appellant was entitled to a lien. It is admitted that the materials and supplies furnished were installed prior to the commencement of the operation of the gas distribution system. The trial court entered its judgment upon an agreed statement of facts denying the lien but allowing the claim as a general claim in the receivership proceeding.

The principal point in the case is as to whether under the general lien law of the state of Oklahoma the appellant is entitled to such lien. Section 7461, C. O. S. 1921, as amended by Laws 1923, c. 54 (section 10975, Oklahoma Statutes 1931), reads as follows: "Any person who shall, under oral or written contract with the owner of any tract or piece of land, perform labor, or furnish material for the erection, alteration or repair of any building, improvement or structure thereon or perform labor in putting up any fixtures, machinery in, or attachment to, any such building, structure or improvements; or who shall plant any trees, vines, plants or hedge in or upon such land; or who shall build, alter, repair or furnish labor or material for buildings, altering, or repairing any fence or foot walk in or upon said land, or any sidewalk in any street abutting such land, shall have a lien upon the whole of said tract or piece of land, the buildings and appurtenances. If the title to the land is not in the person with whom such contract was made, the lien shall be allowed on the buildings and improvements on such land separately from the real estate. Such liens shall be preferred to all other liens or encumbrances which may attach to or upon such land, buildings or improvements or either of them subsequent to the commencement of such building, the furnishing or putting up of such fixtures or machinery, the planting of such trees, vines, plants or hedges, the building of such fence, footwalk or sidewalk, or the making of any such repairs or improvements; and such lien shall follow said property and each and every part thereof, and be enforceable against the said property wherever the same may be found, and compliance with the provisions of this Article shall constitute constructive notice of the claimant's lien to all purchasers and encumbrancers of said property or any part thereof, subsequent to the date of the furnishing of the first item of material or the date of the performance of the first labor."

There seems to be no question but that the lien is claimed upon the property of a corporation, quasi public in its nature, inasmuch as the meters for which the account was incurred were part of the distribution system of measuring gas to the public in the community in which it was established.

The general rule in a transaction of this character is fairly stated in 40 C. J. 60, in the following language: "As a rule the property of a quasi-public corporation, which is affected with a public use, is not subject to a mechanic's lien. Thus it is held that a mechanic's lien cannot be acquired or enforced against the property of railroad, street railway, or waterworks companies. A mechanic's lien may, however, be enforced against property of a quasi-public corporation which is not essential to the carrying out of the public purposes for which it was established, or property to which the lien has attached before it became impressed with a public use, or the property of a corporation which is a private corporation and not a public or quasi-public one; and under the provisions of some constitutions or statutes a lien may attach to the property of a telephone, railroad, or waterworks company."

The learned trial judge, in disposing of the question, strongly relied upon the decision of the Supreme Court in Buncombe County Commissioners v. Tommey, 115 U. S. 122, 5 S. Ct. 626, 1186, 29 L. Ed. 305, which seems to be a leading case, and in the absence of specific statutory provisions, having been generally followed by the federal courts. At page 128 of 115 U. S., 5 S. Ct. 626, 629, 1186, delivered by Mr. Justice Harlan, the following appears: "Apart, however, from these considerations, we are of opinion that a law giving to mechanics and laborers a lien on buildings, including the lot or ground upon which they stand, or a lien upon a lot or farm, or other property, for work done thereon, or for materials furnished in the construction or repair of buildings, should not be interpreted as giving a lien upon the roadway, bridges, or other property of a railroad company that may be essential in the operation and maintenance of its road. In North Carolina, as in most, if not in all the states, railroads, although constructed for the private emolument of those engaged in such enterprises, are highways which have been established, under the au-

thority of law, primarily for the convenience and benefit of the public."

In Pennsylvania Steel Co. v. J. E. Potts Salt & Lumber Co., 63 F. 11, at page 13 (C. C. A. 6), a court composed of Judges Taft and Lurton, Circuit Judges, and Severens, District Judge, the following language was used: "In the absence of any controlling decision in the state court, the case of Buncombe County Commissioners v. Tommey, 115 U. S. 122, 5 S. Ct. 626, 1186 [29 L. Ed. 305], may be regarded as a leading authority in the solution of the question involved."

Other cases in point are: McNeal Pipe & Foundry Co. v. Bullock, 38 F. 565 (C. C. Ala.); Greenwood A. & W. Ry. v. Strang, 77 F. 498 (C. C. S. C.); Industrial & Mining Guaranty Co. v. Electrical Supply Co., 58 F. 732 (C. C. A. 6); Cleveland, C. & S. R. Co. v. Knickerbocker Trust Co., 86 F. 73 (C. C. Ohio).

█ Regardless of this well-defined rule, however, it is the contention of appellant that the Oklahoma lien statute was taken from the state of Kansas, in which latter state prior to its adoption by Oklahoma, it had been held to cover and include liens against property of a public utility and that the courts of the adopting state will be presumed to follow the same construction given the statute by the court of the forum from whence it came. This may be admitted to be a general rule, although it is subject to many exceptions. Kraus v. Chicago, B. & Q. R. Co. (C. C. A.) 16 F.(2d) 79.

It becomes necessary, therefore, to examine the history of this statute in Oklahoma. In Badger Lumber Co. v. Marion Water Supply, Electric Light & Power Co., 48 Kan. 187, 29 P. 476, 15 L. R. A. 652, 30 Am. St. Rep. 301, referred to as construing the statute adopted by Oklahoma from the state of Kansas and relied upon as entitling a claimant under the mechanic's and materialmen's lien statute to a lien upon a public utility, it was held that a concern with a franchise to engage in furnishing light to the people of a city was not so distinctively public in its nature as to exempt its property from the application of the lien statute. Formerly it had been held under the same statute that a lien might be secured on a public schoolhouse. Wilson v. School District, 17 Kan. 104.

An examination of the Oklahoma decisions, however, do not seem to sustain the theory that the statute so adopted has generally been accepted with the construction placed upon it by the Kansas high court. In Hutchinson v. Krueger, 34 Okl. 23, 124 P. 591, 71 L. R. A. (N. S.) 315, the gist of the decision was that in the absence of a statute expressly authorizing it, there could be no mechanic's lien upon a public building of the state, as such lien would be contrary to public policy, and in the decision of the point by the court at pages 28 and 30 of 34 Okl., 124 P. 591, 593, the following language is found:

"We have made this somewhat extensive collection of the views expressed in the various states for the reason that the point has not had the consideration of this court, or of its predecessor the territorial Supreme Court, and because it is a question of considerable concern to the people of the state, and further because Kansas, the state from whence our lien laws were imported, has held otherwise. We will therefore consider the Kansas decisions and whether they are of binding force on this court. In doing so we are not unmindful of the general rule that the Legislature of one state, in adopting a statute of a sister state, is presumed to have adopted also the construction of such statute placed thereon by the court of last resort of such sister state. * * *

"These decisions of the Kansas court are not controlling here under even a strict interpretation of the rule regarding former construction of adopted statutes for the reason that the statute construed has been materially changed by amendment after the decisions and before adoption here."

Inasmuch as the court came to a different conclusion than that of the Kansas court, it can scarcely be said that the construction had been accepted and ratified by the Oklahoma court.

In Western Terra Cotta Co. v. Board of Education, 39 Okl. 716, 136 P. 595, it was held that there could be no mechanic's lien on the public buildings of the state as such lien would be contrary to public policy; and the court again discussed the adoption of the Kansas statute and its construction in the following language found at page 718 of 39 Okl., 136 P. 595, 596:

"The great weight of authority is to the effect that in the absence of a statute there can be no mechanic's lien on the public buildings of the state or subdivisions thereof on the ground that such lien would be contrary to public policy and incapable of enforcement.

"Conceding the general rule to be as stated, it is insisted, however, by counsel for plaintiffs in error that the territorial Legislature, having adopted the Kansas statute on the subject of mechanic's liens, and it having, prior to its adoption, been construed by

the Supreme Court of Kansas so as to permit mechanic's liens to be filed against property devoted to the public use, such decisions are binding upon this court. The same contention was urged in Hutchinson v. Krueger et al., 34 Okl. 23, 124 P. 591, 41 L. R. A. (N. S.) 315. It was there held by this court that, while it is a general rule that the Legislature of one state, in adopting the statute of another, is presumed to have adopted the construction placed on such statute by the highest court of such other state prior to its adoption, yet the rule is subject to the following exceptions: (1) Where the construction is contrary to the Constitution or. the well-defined legislative policy of the adopting state; (2) where the adopted statute exists in many other states, and such construction is contrary to the decided weight of authority in such other states having substantially the same statute."

A similar holding concerning a lien on property erected for school purposes is found in Minnetonka Lumber Co. v. Board of Education, 41 Okl. 541, 139 P. 284.

In Continental Supply Co. v. George H. Greenan Co., 140 Okl. 221, 282 P. 598, the question arose as to the right to a lien on a pipe line. In that case the court held that inasmuch as there was no showing that the pipe line was a common carrier, the lien would be enforced. The decision is persuasive, in that if the Supreme Court of Oklahoma had considered that the general lien law covered a public utility there would have been no necessity of the differentiation found in the opinion.

In Midland Valley R. Co. v. McLemore, 73 Okl. 102, 174 P. 1079, the question arose as to the validity of a lien against the property of a railroad, and the court considered and decided the case upon the point as to whether or not a statute specifically granting a lien upon railroad property was in force and effect at the time the lien came into existence. If it had been considered that a lien upon railroad property came under the general lien law, there would again have been no necessity of construing the statute relating to liens upon the property of railroads. In addition, we gather that it must have been assumed by the Legislature of the State of Oklahoma, in subsequently enacting a statute granting liens against the property of railroads, that the general lien laws did not apply, else such statute would have been unnecessary.

So we conclude that in the light of these various and repeated expressions by the Supreme Court of Oklahoma, the general lien statute as adopted from Kansas has not been accepted in the former state with the construction as then placed upon it by the Kansas courts. This analysis leaves us in the position of construing the statute as it has been construed by the courts generally and as found in the Tommey Case, supra, which is in accord with the views of the trial court.

The contention is also made by the appellant that it is entitled to a lien under the law pertaining to personal property, but inasmuch as the meters had become attached to and a part of the system at the time the lien was filed, we see no way that the claim against the property could be presented under the Oklahoma statute pertaining to liens upon personal property. Likewise untenable is their contention that at the time the meters were installed the gas distribution system had not been devoted to a public use. The same public policy which forbids a lien against the property of a quasi public corporation would be equally applicable to a corporation obligated to furnish public service but not having actually commenced the carrying out of its public function.

For the reasons stated, the decree of the trial court will be, and is, affirmed.