The court took time to advise, and now at this term, delivered the following opinion.
 

 Ruffin, C. J.
 

 This case was treated at the bar as depending upon the question whether the defendant gained a right of property by the sheriff’s sale and conveyance in the part of the road purchased, or in the materials of which it was con-
 
 *303
 
 Btructed. We think that a proper view of the subject, because the statutes which make it. an offence to obstruct the road or' destroy its materials, have in view the acts of a person who is not the proprietor of the road or materials, but acts wantonly and not in the exercise of a right. The seventh section of the charter, for example, provides that if any person shall wilfully injure the road, he shall forfeit the sum of $500 to the company, to be recovered by the company in an action of debt, and shall also be subject to an indictment. So it is seen that the indictment is given where the penalty is incurred to the corporation, and that cannot accrue when one enters under the corporate conveyance, or under a sale on execution against the corporation, provided such sale passes the property and the purchaser peaceably enters upon his right of property.
 

 The enquiry, then, is, whether, by the law of this State, the writ
 
 offieri facias
 
 lies against the land on which a rail road is laid out? It might be material to distinguish between the road itself, and the materials, such as the iron and timber, laid down on it, if the corporation had a mere easement or right of way over the land; for in that case the law would probably, in favor -of creditors, regard those materials as mere fixtures of an occupier of land, which
 
 might be severed
 
 and sold by the sheriff, if, as the property of a privileged corporation, they were not altogether exempted from execution. But the court does not deem it needful to enter into that question here, for two re’asons — the first, that the materials were not severed, nor were they sold as distinct from the land; and the second, that we think the corporation had an estate in the land, at least for a term extending far beyond the duration of those materials, and therefore that they had lost their distinct character as personal chattels, and were sunk into the realty.
 

 We have said that the corporation had an estate in the land laid off for the road. Both the express provisos of the charter, and the necessity of the case, lead to that conclusion. The 3d section enacts that, after the assessment and payment of • the damages, the company may enter upon the land condemned and hold it to their use and benefit, for the purpose of pre
 
 *304
 
 serving and keeping up the road during the continuance of the corporate existence by the act given to them, (which is sixty years,) and declares that, in all things, the company shall have the same power and authority over said land so laid off during their existence as a corporation under the laws of this State, as though they owned the fee simple therein. This language can signify nothing less than that the corporation is the tenant of the land, as the owner of the legal estate for the term of sixty years, subject to the earlier determination of the corporation from any cause.
 

 Most of the rail road charters in this State give an estate in the land in fee. Some estate, indeed, is necessary to the preservation or protection of the road. It is true, the act gives a penalty of $500 for destroying any part of the road. But that is an inadequate protection — for an evil disposed person might burn a valuable bridge, or do some other injury far beyond that penalty in value, or might intrude on the land without actually obstructing the road, and in such cases the company ought to have, and no doubt has, remedy by action of trespass or ejectment, as the tenants or owners of the soil. It is true, the act says the company shall hold the land “ for the purpose of preserving and keeping up the road” — and it is contended that these words, at least, make the estate conditional, and that the condition is of such a nature as to defeat the estate, if not performed, and (hence it was inferred that there could be no sale of it, inasmuch as that would prevent the company from performing the condition. As far as respects the rights of the company, or the private interest of its stockholders, those considerations, if true, could avail nothing; for the debtor has no interest in the question, to whom the property shall go after a sale of it for the payment of his debts. That is a question which, in this case, may arise between the reversioner a^rd the purchaser, or between him and the public. An estate, upon condition, is not necessarily exempted from sale by execution. But we do not regard those words as creating a condition, in its proper sense. They only assign the reason why the law vests the estate in the corporation.—
 
 *305
 
 The object in view was to have the road, and that is stated the justification of taking- private property and vesting it in the corporation. Alter being thus taken at the full value paid to the former owner and vested in the corporation, we see no reason why it should not be considered as absolutely vested in the corporation during its existence, or in its assigns during the'whole period for which it was taken. In the case of common and free highways, the public have only an easement, and therefore the remedy for obstructing the passage over it is by indictment merely. But the estate, the right of soil, remains in the original proprietor, who has an action lot injury to the land as the owner of the soil, as he might have in respect to any other part of his land. But in the case of a rail road, it would be manifestly incongruous not to give to the corporation the action for destroying embankments and the superstructure of the road, which the company erected with its funds, but to give such action to the original owner of the land. From the nature of things, therefore, the necessary construction of a charter for such a corporation must be, to vest an estate in the land in the company, unless it be clear that the contrary was intended.
 

 Having ascertained that the corporation has an estate in the land and not a mere easement, it seems to follow, that such estate is liable to execution. In reference to corporations generally, it certainly is true, that in our law their estates, real or personal, are subject to sale on
 
 fieri facias
 
 in the same manner as those of natural persons. By the act of 1820, the plaintiff, in a judgment against a corporation, is entitled to either a
 
 distringas
 
 or a
 
 fieri facias,
 
 and they may be levied on the money, goods, chattels, lands and tenements of the corporation. Rev. St. c. 26, s. 5. Therefore, it is clear, that this land is liable to execution, unless it be exempted therefrom either by the express provision of a statute, or the necessary inference of a legislative intention to that effect. There is no such express enactment. If there was, it would be conclusive; for, doubtless, the legislature can prescribe what shall or shall not be the subjects of execution. But, it was contended for the State,
 
 *306
 
 that such exemption arose from the nature of the property vested the company and its purposes, and from the interest of the public in the road. It was urged in reference to the interests of the corporation, that the preservation of their franchise of receiving toll, which depended on their remaining in possession of and keeping up the road, and their liability to penalties and pains for not keeping up the road, presented considerations of so much more weight than any which the mere satisfaction of a debt to an individual does, that the law ought not to take from it the land to which that franchise is annexed, We agree that the franchise itself cannot
 
 be sold. It is in
 
 tangible, and vested in an artificial being of a particular organization, suited, in the view of the legislature, to the most proper and beneficial use of the franchise; and, therefore, it cannot be assigned to a person, natural or artificial, to which the legislature has not committed its exercise and emolument. We admit also, that the right of passing or of transporting persons or things over the land of another for toll, is but an easement united with o franchise, and is not distinguishable in this respect from other franchises. Yet, it will not follow, that if the grantee oí a franchise, whether a natural person or a body politic, has a vested property in a tangible, personal, or real thing, that such thing may not be taken in execution, although it be useful or indispensable to the most beneficial or even any enjoyment1 of the franchise; unless, indeed, it be declared by the legislature not to be., liable to distress or sale. It may be very unfortunate, and cafi.se mneh loss in a pecuniary sense, to arrest the exercise of a franchise by depriving its proprietor of an estate or thing needful to\its exercise, when, of the two, the franchise or the tangible thing, the former is much the more valuable. We regret,sincerely, that it has hitherto escaped the attention of these companies, and of the legislature, that some act was necessary in order that such sales, wiien unavoidable, might be made with the least loss to the debtors, and the greatest advantage to the creditors and purchasers, by providing for the keeping of the franchise with the estate. Or, if it so please the legislature, an act might provide for putting
 
 *307
 
 the road into the hands of a receiver, and subjecting the come to the creditors, instead of the estate in the land, stripped of the franchise. But nothing of either kind has been done, and those are considerations for the legislature, as to their future action; and cannot influence the decision of the court, as to rights of the creditors of these corporations under a different state of the law. The question for us is, between the neccssity, on the one hand, of subjecting the tangible property of this corporation to sale for its debts, although at the expense of the suspension or loss of its franchise, or, on the other hand, of saying that the creditor has no remedy whatever, and that the corporation may keep its property and enjoy its profits in defiance of moral right and the process of the law. Between these alternatives, a court of justice cannot hesitate. Ifthe corporation has means to pay its debts and will not, or, if it has contracted debts which it is not able to pay without a sale of its property, we can only say, that it is the duty of the court to enforce payment by a sate of the corporate property, be the consequences to the pecuniary interests of the corporation what they may. The law is not responsible for those consequences ; but they have been brought on the corporation by the want of integrity or prudence in its management. It is a sacred principle of justice and law, applicable alike to ali persons, natural and corporate, that the obligations of contracts should be enforced, and debtors prevented from retaining their property to the disappointment of the creditors. Audit is likewise a principle of equity and policy that all debtors should be placed on the same footing; and, consequently, that what .one is compelled to yield up to his creditor, another shall not be allowed to keep to his own use. Against the operation of those sound and salutary maxims of morals and law, it requires much more to be opposed than an argument of inconvenience, that the debtor loses much more than the creditor gets. Still, it is to be replied, that the creditor is entitled to his debt at all events, and that he ought to have it, even at that expense rather than not at all. Therefore, an execution against the property of a corporation, which the law expressly
 
 *308
 
 gives against all corporations, must be satisfied out of its property, provided only that such property be within the description of goods, chattels, lands or tenements. When the law awards an execution of that kind, how can the court say, without a direction from the legislature, that it shall not be served on chattels or certain lands of the corporation, because it would be a detriment to the corporation to be deprived of them? There is no mischief in the case comparable to that of leaving just debts unpaid — debts necessarily contracted for the labor or property of the creditor employed in constructing the road. That would be the view properly to be taken of the law, if there were no special provision in the charter of this company, denoting an intention that its property should be liable to execution. But there is an express provision of that kind. By the charter, the company has the faculties of suing, and being sued, and is to enjoy all the rights, privileges and immunities of a body politic; and by the fourth section, for the damages assessed for entering on land and taking stone, earth and timber for making the road, the execution is expressly given against this,!< as against other corporations.” It is true, that the act specifies but one case, in which it gives execution. But there is no reason why a peculiar preference should be given to that demand above all others, as to the mode of obtaining satisfaction. That case was particularly mentioned, because it was proper to give a summary assessment of the damages and speedy satisfaction of them, as a justification for the taking of private property. But when another debt is reduced to judgment by the regular course of law, that ought also to be satisfied in like manner; and hence, the particular case mentioned in the act is not to be looked on as one, to which a peculiar remedy is annexed, but, rather, as an example of the mode in which payment of the debts of this corporation was to be obtained, that is, by making its property, including, of course, all its property, liable to execution for its debts, as the property of corporations, generally is liable on execution for their debts. In other words, it was not intended to discriminate between railroad corporations and other corporations, as to their duty
 
 *309
 
 of paying debts, or the modes of coercing them to the per-formarme of their duty. It was admitted by the counsel for the State, that this proposition must be received as true, in respect to all the other property of the company, except the land on which the line of road runs, such as the cars, locomotives, supply of wood, timber, and iron not laid down, and land purchased for depots; but it was insisted that it was different with respect to the land forming the road itself. The exemption of that was claimed upon the ground, that, by the sale of it, the corporation itself ceased, so that
 
 co instanii
 
 the land reverted to the former owner; and, consequently, the purchaser got nothing; and so, as the law does nothing in vain, and especially when attended with such destructive consequences, it was inferred that there could be no such sale. But the position is not true, that the corporation is dissolved by a sale. of a part of the road, nor, indeed, immediately upon the sale of the whole road, as it seems to us. It may, because of forfeiture, if insisted on by the State ; and without any prosecution, it may, in process of time, amount to a forfeiture. But, by the express provision of the Statute, it requires a disuse of the corporate privileges and powers fortwo years to amount, of itself, to a forfeiture. Now, although it be generally true, that upon the expiration of a corporation or its dissolution, unless otherwise provided by Statute, the real estate, undis-posed of, will revert to the donor or original owner; yet, that is only true as to such estate as remains in the corporation at the moment of its dissolution, and does not apply to such as had been divested out of it, either by its own act or by the act of law. In this case, therefore, the sale was not vain, but the purchaser got the estate in the land which belongs to the company. If that was not so by the common law, it would, we think, necessarily be so upon the construction of our Statute, which gives the writ
 
 offieri facias
 
 against the company; for, instead of arguing that there should be no sale, because the purchaser gets nothing, the argument is. the other way, that the purchaser does get the estate, because the sale of it is authorized ; and, therefore, even upon a subsequent dissolution
 
 *310
 
 of the corporation, the land would not revert until, by lapse of time, the charter would have expired. But, really, there is no more ground for exempting the line of road than the other property. 0f [¡-ig company: for its operations, the beneficial use of the road either to the company or the public, is as effectually suspended by the sale of all its other effects, as by that of the road itself. Indeed it must be supposed, under our law, that its personal effects have actually been sold, or are purposely withheld and concealed by the company ; because the sheriff cannot rightfully sell land while there are personal chattels. If so, then the creditor is reduced to the last resort, namely, on the land for his debts, and for the reasons already given, it must go, rather than he should be defrauded of his debts.
 

 The question has thus far been considered in reference to the conflicting claims of the creditor and the corporation to the protection of the law. The counsel for the Stale, however, interposes, asa further and distinct objection to the sale of the road, the right of the public to the use of it as a highway, and the
 
 necessity
 
 that the company should retain the road to enable it to perform its duty to the public by keeping it up as a highway. This position rests on the assumption, that, because the road is a highway, it is
 
 ex vi termini
 
 not liable to execution. Now, we cannot assent to that proposition in the extent here laid down. Its correctness depends on the sense in which the term “highway” is used, and on the Legislative intention as to the liability of the property
 
 of
 
 rail road companies for their debts. The Court said in the case of the
 
 Raleigh
 
 &
 
 Gaston Rail Road
 
 vs.
 
 Davis,
 
 2 Dev. & Bat. 451, that a rail road is a highway; but it does not follow, and certainly it was not intended, that it should be understood to be a common public highway, on which all citizens were free to pass, and which, from necessity, could not be the subject of execution, because there is no estate in the public, and because the easement is
 
 exclusively
 
 in the public. In that respect there is an essentia! difference between the one kind of roads and the other. Rail Roads, although
 
 pvblici juris
 
 in some
 
 *311
 
 respects, are the subjects of private property, and it is in the latter character that they are liable to be sold, unless forbidden by the Legislature: not the franchise, but the estate of of the corporation in the land, which is a distinct thing from the franchise. In the sense, that the land and other things taken for its construction are taken for a public use, inasmuch as it is a mode of opening avenues of communication between different parts of the State, and with other States, and, therefore, that it was a proper exercise of the right of eminent domain, we think the expression was correctly used. We have no doubt, too, that it is so in some respects as to the modes of enforcing its due reparation and punishing its obstruction. The latter is expressly made an indictable offence, as is shown by the case now under consideration. The State may compel the company, by
 
 mandamus,
 
 to make calls on the corporators to the full amount of their subscriptions, and lay out the whole capital and the profits in constructing the road and keeping it in repair, if adequate and necessary' to that end.
 
 The case of the Severn & Wye Railway Company, 2
 
 B. & Ald. 646. So, while the company is in possession and using the road, it must be indictable for non-repair, upon the settled principle that they are bound to repair, by their engagement to the public in accepting their charter and occupying the road. But that it is a highway in the sense, that it is not the subject of execution, is quite a different thing. That depends upon the Legislature — and the silence of the Legislature as to the liability of. it to execution, necessarily leaves it thus liable. Roads of this kind have peculiar properties — having a double aspect, the public service and private profit. But both must necessarily yield, in honesty and justice, to the consequences of the impracticability of constructing and keeping up the road by the means provided by the charter, and without contracting debts for those purposes. The public does not obtain an absolute right to require the corporators to construct the road, by the acceptance of the charter and entering on the work. The engagement of the company is only to lay out the capital assigned them and subscribedand to that extent they may be
 
 *312
 
 compelled to proceed. If that be not adequate,it is simply a case of miscalculation of estimates by both sides, and the public loses the use of the road on its side, and the corpora* tion loses its purchase and capital, unless there be a new agreement, granting further facilities to the corporation. But suppose the road to be completed or kept up by contracting debts — and for such purposes only can the corporation contract debts — or suppose the company to incur a liability for damage to an individual; it is plain, we have seen, that the corporation ought to pay those debts or damages.
 

 Now, can it be imputed to the Legislature, that it intended in passing this charter, that such debts should not be paid, and that, in order to prevent the payment of them, the public prerogative to a right of way should be asserted, and under cover of it, the road should be preserved to the corporation as its private property? We think, clearly not. If such a thing had been asked for in the charter, it would have been thrown out of either house of the assembly,, with disgust and scorn. If the Legislature were making the road on the public account alone, the public faith would be the guaranty that
 
 all
 
 demands for labor or materials laid out on it, should be fairl y paid. So, it was not the intention of the Legislature, that this road should not be paid for, or that it should be built at the expense,of any person but the corporators. The public would not have it on any such terms; and if persons, who have laid out their money or labor on it, cannot otherwise obtain satisfaction but by a sale of the road, there can be no doubt, that the public ought to give up, and intended to give up, the convenience of the road, rather than do the injustice to the citizen of denying him compensation for makingit. If the public cannot have the road and the creditor of the company also be paid; if one must yield, there can be no hesitation in saying that the public ought and would promptly yield. If the public should insist upon its rights, then it is bound to make compensation to the creditor out oft he treasury; for it ought not to suffer him to remain unpaid for executing what is claimed as a public work. But no such obligation has ever been supposed to
 
 *313
 
 lie on the State, simply for the reason, that the corporation was properly liable. But that cannot be rendered effectually liable, unless through the instrumentality of an execution served upon its property. We do not know, wherefore the company did not pay the. debt for which this sale was made. But whether it arose from want of inclination or ability, the fault or misfortune is their’s ; and the State never could have intended to interpose and screen either a solvent or insolvent company from the payment of its debts. If the corporation be insolvent, it must, like every other insolvent debtor, give up its property, unless the State either assumes its debts, or by a plain and unequivocal act declares the exemption of its property. If the State chooses still to have a rail road, it may. either enable this corporation to enter on the land again, making compensation for it, if it be not already endowed with the power, or a new charter may be granted to another company, or it may be executed by the'State directly. But by constituting a corporation to execute this work, and to have property in it; by enacting that thé
 
 fieri facias
 
 shall run against the property of corporations generally; by not exempting the property of the rail road company from the general liability of corporate property to execution; and by declaring in some cases that execution should run against
 
 it
 
 “as against other corporationsthe legislative intention must clearly be understood to have been, that the public right to the use of the road should be dependant upon the ability of the corporation to meet the just demands of its creditors without a sale of the road. Paying the debts for making the road is the first and highest duty of the corporation. The element of that duty is moral, and precedent to any mere duty ofpolice; and the legislature cannot be supposed to have intended a violation of that first of duties, upon any evidence less than its explicit enactments.
 

 The court is, therefore, of opinion that this land was liable to be sold on the execution, and that the purchaser would have obtained a good title, had the sale been duly made. It was not, however, duly made. By the statute, Rev. Stat. c. 45, s.
 
 *314
 
 10, it is enacted that all sales of land and slaves shall be mads at court-house on Monday of the county court, or the corresponding Monday in every month. The sale in this case was on the premises and on a different day of the week. We have more than once said, that this is a substantial part of a sheriff’s sale, because the regulation is for a sale of all the property at one place and at the same time, which may be offered for sale in the county in any one month, under the expectation, that there will be numerous bidders and fair prices had. Of such a regulation, every one must be cognizant; and therefore we have held, that the purchaser gets no title bya sale at an improper time and place.
 
 Mordecai
 
 v. Speight, 3 Dev. 428.
 
 Avery
 
 v.
 
 Rose,
 
 4 Dev. 554. For this last reason the judgment must be affirmed. We regret that result, as we have just been informed, that there is a private act regulating sales in Northampton county, and that the sheriff observed its provisions in this sale. If so, it is unfortunate that the act was not stated in the case ; for being a private act, we cannot judicially notice it, and, indeed, we have not seen it.
 

 Per Curiam, Judgment affirmed.