McNEAL PIPE AND FOUNDRY COMPANY v. A. H. HOWLAND
AND THE DURHAM WATER COMPANY.

*Lien for Materials Furnished—Corporation—Notice—Water-Works—Public Policy—Contract—Assignment.*

1. The property of a corporation chartered for the purpose of supplying water to a city is subject to the lien for materials furnished provided by *The Code*.

2. Where a company, F., agreed with one H. to supply him with piping, etc., (to be used in establishing his water-works plant), and, pursuant to such agreement, F. supplied such material, but before he he had finished making such supplies, H. assigned, without notice to F., his contract with the city for which the water-works were intended, to a company chartered for the purpose of supplying it with water, etc., which assumed, also, his liabilities, and he continued in the work as the subcontractor of such corporation; and thereafter F. filed, in due form of law, in the Clerk's office, the notice of his lien for material furnished, and on the day of filing, the corporation had, for the first time, actual notice of such liability and lien: *Held*, (1) that F. *was entitled to enforce his lien* against the corporation for supplies furnished both before and after the assignment; (2) the lien related back from the time of the filing to the time of the beginning of supplies; (3) that the real estate, the plant assigned to the corporation, and for the improvement of which the materials were furnished, was liable; and (4) for reasons of public policy it should be sold, together with the franchise of the corporation.

AVERY, J., dissenting.

This was a CIVIL ACTION, tried at March Term, 1891, of DURHAM Superior Court, before *Boykin, J.*

In June, 1886, the defendant Howland contracted in writing with the defendant town of Durham to construct a system of water-works for said town to supply water for public and domestic purposes. On November 3, 1886, the plaintiff contracted to sell to Howland the necessary materials, and the same were supplied and used for constructing said water-works, and the delivery thereof, which was included in the

contract, began on December 4, 1886, and was completed on May 7, 1887.

In the latter part of the year 1886 the Durham Water Company was incorporated, and on January 1, 1887, Howland assigned his contract with the town to the said Durham Water Company, and the company assumed the duties, liabilities and obligation of Howland to said town under the contract aforesaid.

On July 19, 1887, Howland having failed to pay plaintiff a large part of his indebtedness for materials furnished, the plaintiff filed its claim for the same in the office of the Clerk of the Superior Court of Durham County, in order to secure a lien as allowed by *The Code*, §§ 1782–1808. It was admitted that this claim was sufficient in form and comprehensiveness, but it was contended that it that was not sufficient to create the lien as claimed by plaintiff. On the day the claim was filed, the plaintiff gave the defendants notice of Howland's indebtedness to it and the filing of its claim and its alleged lien, and demanded of said defendant company that it retain out of the amount due, or to become due from it to the said Howland, on account of the said water-works, so much as was necessary to pay plaintiff's claim.

The Court below adjudged that the lien filed by plaintiff was of no force and effect, and that the same be vacated and set aside, and it was further adjudged that the Durham Water Company recover its costs of plaintiff, and also that plaintiff pay all the cost connected with the filing of the lien. And it was furthur adjudged that plaintiff recover of the defendant Howland the sum of $16,975.73, with interest, &c. Both parties appealed.

*Messrs. John W. Hinsdale* and *W. A. Guthrie,* for plaintiff.

*Messrs. Boone & Parker* (by brief), and *W. W. Fuller,* for defendant.

MACRAE, J.: We adopt the following opinion, prepared by the late Chief Justice MERRIMON, in this case, with such additions thereto as in our judgment are necessary to a full determination of the questions presented to us on appeal. That opinion is as follows:

"The statute (*The Code*, §§ 1781 to 1808) entitled 'Liens,' is remedial, and its clear purpose is to give contractors, subcontractors and laborers liens upon property as therein prescribed and provided, to secure the payment of money due for labor done or materials supplied on or about the same. To that end its language, phraseology and scope are broad and comprehensive. There are few, if any, express exceptive provisions in it, and, in the absence of them, exceptions and limitations affecting such liens cannot be allowed unless by necessary implication. The object is to give a lien on particular property deriving particular benefit in favor of classes of persons whose claims are supposed to have particular merit. All this is made the more manifest by the amendatory statute (Acts of 1887, chapter 67). Moreover, numerous decisions of this Court, interpreting this statute, and the amendments thereto, fully sustain the view here expressed. *Chadbourn* v. *Williams*, 71 N. C., 444; *Wooten* v. *Hill*, 98 N. C., 48; *Burr* v. *Maultsby*, 99 N. C., 263.

"Adverting now to provisions of the statute pertinent to the present case, section 1781 thereof provides, among other things, that 'every lot, farm, or vessel, or any other kind of property, real or personal, not herein enumerated, shall be subject to a lien for the payment of all debts contracted for work done on the same, or *material furnished*.' It is further provided that 'the lien for work on crops or farms, or materials given by this chapter, shall be preferred to every other lien or incumbrance which attached upon the property subsequent to the time at which the work was commenced or the materials were furnished.' *The Code*, § 1782. It is further provided that 'all subcontractors and laborers who

are employed to furnish or do furnish material for the building, repairing or altering of any house, or other improvement on real estate, shall have a lien on said house and real estate for the amount of such labor done or material furnished, which lien shall be preferred to the mechanic's lien now provided by law, when notice thereof shall be given as hereinafter provided, provided that the sum total of all the liens due subcontractors and material men shall not exceed the amount due the original contractor at the time of notice. *The Code,* § 1801. In this connection section 1802 provides that ' any subcontractor, laborer or material man who claims a lien as provided in the preceding section, may give notice to the owner or lessee of the real estate who makes the contract for such building or improvement at any time before the settlement with the contractor, and if the said owner or lessee shall refuse or neglect to retain out of the amount due the said contractor under the contract as much as shall be due or claimed by the subcontractor, laborer or material man, the subcontractor, laborer or material man may proceed to enforce his lien, and after such notice is given no payment to the contractor shall be a credit on or discharge of the lien herein provided.' It is further provided in section 1789 that ' notice of the lien shall be filed as hereinbefore provided at any time within twelve months after the completion of the labor, or the final furnishing the materials, or the gathering of the crops, provided that in cases of liens on real estate or any interest therein, given by this chapter, the notice shall be filed in the office of the Superior Court Clerk within *twelve months* after the completion of the labor or the final furnishing of the materials.' When the claim is so filed within twelve months, the lien relates back to the time. at which the work was commenced or the materials were furnished,' and is preferred to all liens or incumbrances created to that time. *The Code,* § 1782; *Burr* v. *Maultsby, supra,* and cases there cited. And this is so, although the subsequent incumbrancer had no notice of the lien thus relating back.

"The clause of the statute (*The Code,* § 1781) first above recited, declares that 'every lot, farm or vessel, or any kind of property, real or personal, not herein enumerated, shall be subject to a lien for the payment of all debts contracted for work done on the same, or *materials furnished.*' This phraseology and the purpose of it are comprehensive. The lien prescribed attaches, in the case provided for, to *any* real property whether it be denominated 'a lot or farm,' or a storehouse site, a mill site, a water reservoir site, or the like. The lien arises in favor of and to secure the payment of any and 'all debts contracted for work done on the same, or materials furnished.' By the term 'material furnished,' is meant something furnished to be appropriated, used and pertinently applied on the land, devoted to some purpose, no matter what, so that the purpose be lawful. The purpose is to secure the debt contracted for materials furnished on or about or connected with the land in connection with the purpose to which it is devoted, in whole or in part. The debt so contracted becomes a lien, a charge upon the land, and *that land* may, if need be, be sold, or in some appropriate way applied to the payment of the debt secured by and constituting the ground of the lien. It makes no difference as to the ownership of the land if the debt for such considerations was lawfully contracted, because the land is benefited by the labor so done on or about it, or by the materials furnished. The intention is that the land shall be charged by a lien with the cost of the benefits so extended to it, whether the benefits arise from labor done in building or repairing houses, in cultivating the land, building fences, ditching, felling trees, or the like, or from the erection of mills of any kind on it, or from supplying machinery, fixtures or any 'material furnished' for such purpose. This is a just and reasonable interpretation of the clause of the statute recited. Indeed, it would be difficult to suggest any other fair meaning.

"In the present case the defendant Howland contracted with the town of Durham to supply it with water for public and domestic purposes, and with that view and to that end he acquired certain land situate four or five miles from the town for the purpose of constructing a water reservoir, and the right-of-way for pipes under ground through which to convey the water to the town. In connection with this water reservoir, much machinery, pipes and other material were necessary. He contracted with the plaintiff to supply him with a large quantity of suitable pipe and other things to be used on and about the land for the purpose of this reservoir and to effectuate the end contemplated by it. The contract did not recite in terms that the pipe and other things, so supplied by the plaintiff, were to be used for the express purpose of the reservoir and water supply; but it appears that the plaintiff knew of it, and it savors of trifling to suggest that it was not well and distinctly understood and intended by the parties that the goods were furnished for such purpose. The contract and the goods supplied suggested the purpose, and it was not necessary to recite or declare it in terms. It was sufficient that it certainly appeared. *Lanier* v. *Bell*, 81 N. C., 337, is not inconsistent with what is here said, as seems to be supposed.

"The plaintiff furnished the pipes and other things to the defendant for the purposes of the reservoir and water supply to be made by and through means of it. The defendant Howland failed to pay a large part of the debt he contracted to pay the plaintiff for the materials so furnished by it. In view of the facts, at once upon supplying such materials not paid for, a lien upon the land mentioned, and the property connected with it permanently for the purposes to which it was devoted, arose in favor of the plaintiff. Its debt at once became a *charge upon the land*, to be perfected by filing its claim in that respect in the office of the Superior Court Clerks as above pointed out. And this filing might be done at any

time within twelve months next after furnishing the materials above mentioned. It was done within that time. This lien, so perfected, related back to the time when the materials began to be furnished. The statute so provides. *The Code,*. §§ 1781, 1789; *Burr* v. *Maultsby, supra.* The enterprise of supplying the town with water was that of the defendant Howland; the *property was his;* it did not in any sense belong to the town; it had not taken on any quality or been placed in any condition that rendered it exempt from lien as contemplated by the statute. It belonged to a private individual.

" The statute (*The Code,* §§ 1890, 1891) prescribes how the plaintiff might enforce his lien. Upon his judgment he is entitled to have execution against the property, which shall direct the officer to sell the right, title and interest which the owner had in the premises or the crops thereon at the time of filing notice of the lien, before such execution shall extend to the general property of the defendant. The property to which the lien attaches is specially devoted to the satisfaction of the plaintiff's debt, and hence it must be sold before his other property may be resorted to for the like purpose.

" It appears that the defendant, the Durham Water Company, was incorporated in the Fall of 1886, and invested with appropriate corporate powers for the purpose of supplying the said town with water, and that the defendant Howland, on the first day of January, 1887, sold and assigned his contract with the said town to it, and likewise sold to it all the property he had acquired for the purpose of making such water supply, and this property embraced that to which the plaintiff's lien attached. It is earnestly contended that therefore the plaintiff acquired no lien, first, because the defendant Water Company (a *quasi* public corporation) acquired title, by its purchase, to the said property, and the latter is devoted to public purposes, and hence is not the subject of such lien; and, second, because the plaintiff's lien, if indeed he ever had any, was secret—notice of it and the

plaintiff's debt and claim had not been filed in the office of the Superior Court Clerk until the 19th day of July, 1887, after the said company purchased the property.

"As appears from what has been said above, the plaintiff did have a lien for its debt upon the property (the land and fixtures made part of it) which the defendant company pur-chased from its co-defendant Howland; that although the plaintiff's claim was not filed until the 19th of July, 1887, the lien related back to the time when the plaintiff began to supply the materials, which time antedated the purchase of the defendant company. If it be granted that the defendant company was, in a sense, a public corporation, and its prop-erty was devoted to a proper public purpose, it did not and could not buy the property it did buy from its co-defendant discharged of the plaintiff's lien without its assent. It did not assent, and hence the company took the property charged with and subject to the lien. No public corporation—not the State itself—could purchase property for public purposes charged with a lien in favor of the plaintiff, and thereby dis-charge such lien, unless with the plaintiff's assent, or by proper condemnation of the property, and compensation to him to the extent of his interest. The lien was a lawful and valuable incident to and security for the plaintiff's debt, and it could no more be deprived of it, as contended, than it could be of the debt itself. It was the misfortune or folly of the company that it purchased property for public purposes subject to a lien. It ought to have been more cautious and better advised.

"It is said the *lien* was a secret one, and the company could not know of it. The answer is, that in the present state of the law it should have made diligent inquiry before purchas-ing the property as to laborers' and material men's liens upon it. Private persons must do so; they fail to do so at their peril. And corporations, public or private, are upon no bet-ter footing. There is neither statute, nor precedent, nor any

principle of justice that places them on a footing different from natural persons. The Legislature has provided by statute (*The Code*, § 1789) that notice of the plaintiff's claim may be filed at any time within twelve months after the completion of the labor or the final furnishing of the materials. This provision has been repeatedly held to be valid. *Burr* v. *Maultsby, supra,* and cases there cited."

In addition to what was said by the late Chief Justice, we proceed further: It is found by the jury that the contract was made between the plaintiff and the defendant Howland as alleged in the complaint, and that material was furnished by plaintiff to said defendant under said contract to the amount and value, as ascertained by the verdict. This contract, being a single one, covering all the material furnished, we hold that the lien attaches for all the said material delivered, up to and including the last item, notwithstanding the fact that, pending the execution of the contract, and before the delivery of all the material, the defendant Howland assigned his interest in the said contract and became a subcontractor under his assignee, and this without notice to the plaintiff, who continued to deliver the material to Howland, who, as subcontractor, used it in the completion of the water-works for Durham. *The Code,* § 1782; *Burr* v. *Maultsby,* 99 N. C., 263, and cases there cited. Under any view of the law than that taken by us, how easy it would be to evade the provisions of this act, passed for the benefit of mechanics and material men, and avoid the lien upon the property. The defendant Howland, a private person, makes his contract with the city of Durham to supply it with water; he purchases land and makes contracts for the purchase of other lands; he secures rights-of-way and other easements; he purchases pipes and other material for carrying out his contract, property which he uses in the construction of the water-works, and on which a lien attaches by virtue of the statute.

Can it be possible that by the formation of a corporation and the assignment to it of his contract he may divest the lien which had already attached, and without notice to the plaintiffs of his assignment, continue to receive material, and use the same for the completion of the work, free from all lien in favor of the material man, who, in ignorance of the transfer, was relying upon the laws providing him a lien, and furnishing the material without further security?

It was manifestly the business of the assignee to inform itself in the matter. It had assumed the liabilities of its assignor under his contract with the town of Durham. It received the benefit of the material which he was receiving from plaintiff; it was put upon notice as to his liabilities for labor and material by the lien laws of the State. If the Durham Water Company is such a corporation as is authorized to receive fare or tolls, the way is plain to the plaintiff, under section 671 of *The Code*, to sell the franchise of the defendant company with all its rights and privileges, so far as relates to the receiving of fare and tolls, and all of its property, under execution or other appropriate means of carrying the judgment into effect.

The word toll in the sense used in the statute is a tax paid for some use or privilege or other reasonable consideration (Century Dictionary), and the definitions in all the books are substantially the same. Fare is a rate of charge for the carriage of passengers. A water-rate, that which the defendant company may charge, is a tax or compensation for the furnishing of a supply of water.

The plain purpose and intent of section 671 of *The Code,* the Act of 1820, as amended after the decision in the case of *State* v. *Rives,* 5 Ired., 297, was to afford a remedy against that class of *quasi* public corporations where the franchise ought not to be separated from the plant or property for reasons of public policy. The words originally used in the Act of 1820 were, "if the judgment or decree be *against a rail-*

*road* or other corporation authorized to receive fare or tolls." As brought forward in *The Code*, the words are "against any corporation authorized to receive fare or tolls." It would be a strained construction of the words used in the statute, even in a statute in derogation of the common law, to hold that they must be strictly confined to cases where these words are technically used, and there alone. It would do violence to the evident spirit and meaning of the law, and, in cases like the present, frustrate its purpose.

The franchise of the water company is inseparable from its plant or property. The public necessity requires that they should be sold together, for, in this case, the purchaser will take *cum onere* and the public be protected. *Foundry Company* v. *Water Company*. Fed. Rep., vol. 52, No. 1, p. 43, and cases there cited.

It may not be inappropriate for us to suggest that to avoid all possible risk of temporary suspension of the operation of this important work, it would be proper, in this case, to appoint a receiver under section 379, subsection 2 of *The Code*, to carry the judgment into effect.

There is error. So much of the judgment appealed from as declares the plaintiff's lien void and denies its right to enforce the same must be reversed and an appropriate judgment entered giving it effect. To that end let this opinion be certified to the Superior Court. It is so ordered.

AVERY, J., dissenting: The plaintiffs' appeal is from the refusal of the Court below to adjudge that, to secure the payment of the amount recovered from the defendant Howland, the plaintiffs have a lien "upon all the property, rights of property, privileges and franchises of every nature whatsoever belonging to said Howland, under and by virtue of his aforesaid contract with the town of Durham, or which, by his aforesaid assignment, was transferred to the Durham Water Company, and also upon all lands, buildings, reser-

111—40

voirs, machinery, engines, boilers, fixtures, easements, rights-of-way, appurtenances and privileges belonging to and connected with and constituting the said Durham Water-Works, situated in and near the town of Durham," and to appoint Commissioners to sell the property to which the lien attached, unless the balance due plaintiff should be paid by a given day. If the plaintiff company has failed to establish its right to a lien against the separate pieces of property that were being used for public purposes, and as well to show that any lien attached to the franchise of the defendant company for pipes furnished to its subcontractor, it would seem that the plaintiffs are entitled to nothing more than was conceded to them, without question a judgment against Howland for the balance due for piping.

Entertaining the highest respect for the views of my brethren, I think, nevertheless, that they have fallen into error. My own views of the points involved in the controversy may be summarized in the following propositions:

1. The plaintiff company sustained the relation to the defendant Howland and his assignee, the Durham Water Company, of material man, and while, as between the original contracting parties (the plaintiff and Howland) the debt for material furnished for a private building might, within twelve months, be made a lien, relating back as contended, the lien in favor of a subcontractor under the statute (*The Code*, § 1802) attaches only from the time of giving notice to the contractor, and only as to any unpaid balance due to the subcontractor when the notice is given. Section 1781 applies to controversies between the owner of the land and the builder or contractor, and provides for subjecting the land to liability for work done or material furnished by such builder or contractor and in his favor, provided notice is filed within twelve months from the completion of the labor or the "final furnishing of the material." *The Code*, §§ 1782 and 1789.

2. If the lien laws of 1868–'69, 1869–'70 and 1872–'73 (*The Code*, §§ 1781 to 1800) apply to subcontractors, or the class of material men who are provided for under the Act of 1880, ch. 44 (*The Code*, §§ 1801 and 1802), and give the lien relation back when it is filed within twelve months from the time of furnishing the last material, as between individuals, I do not think that the lien laws were intended to be so construed as to embarrass property devoted, by the very terms of the contract, to a public purpose, and to be used by the sovereign State or any public or *quasi* public corporation in the exercise of its delegated sovereign powers.

3. The plaintiff could look in any event only to Howland, to whom it sold the material, and could not sell the franchise or sequester the profits of the defendant company for the satisfaction of Howland's debt, which was not a lien upon land, pipes, &c., used for the purpose of furnishing water, and the statute cannot be construed as creating a lien upon a franchise if none attaches to the property.

After passing laws for the protection of laborers, mechanics and material men at successive sessions from 1868 to 1873, the Legislature made no further additions to or alterations in the statutes bearing upon this subject till the enactment of chapter 44, Laws of 1880. If the claims of subcontractors and material men furnishing them were superior to those of the original contractors before 1880 (under *The Code*, § 1781 to § 1800), why was the Legislature of 1880 guilty of the folly of providing that it should be preferred to "the mechanic's lien now provided by law." If the enactment of that statute was necessary (as the Legislature seemed to think) in order to give such material men, as well as subcontractor, adequate protection against the mechanic to whom he furnished material, then we must look to its provisions alone for the adjustment of the rights previously unprotected, and proceeding upon that obviously fair construction of the law, we find in support of it the explicit proviso to section 1801 that "the sum

total of all liens due subcontractors and material men shall not exceed the amount due the original contractor at the time of notice given." Such notice is to be given by the material man " at any time before settlement with the contractor," and " after such notice is given no payment to the contractor shall be a credit on or discharge of the lien herein provided." In the same way the subsequent Act of 1881 (*The Code*, §§ 1804 and 1805) protected subcontractors and laborers against contractors and stevedores only after notice given to the master, agent or owner of a vessel, thus showing a purpose to secure still another class of laborers not previously provided for.

Howland transferred the benefits and burdens of the original contract to his co-defendant company, and from and after January 1, 1887, became subcontractor, but still leaving his individual arrangement with the plaintiff intact, finished the work and received payment in negotiable bonds of the Water-works Company, which were payable to bearer and were secured by a mortgage on the franchise and property of said company. Up to the time when the plaintiff filed a lien on the reservoir of the company with the acre of land on which it was located, the line of piping, passing three feet under ground through the lands of various persons who cultivated the soil above the pipe-ditch and through seven miles of public street, under the said contract with the town of Durham, and also on the franchise of the defendant company, the company had no notice that plaintiff was furnishing Howland pipe and castings, and no information from whom he was purchasing it. When the notice was at last given, on July 19, 1887, the jury find that the defendant Durham Water-works Company had paid to the plaintiff in discharge of its indebtedness, under the agreement of January 1, 1887, fifty thousand dollars of its first mortgage bonds, transferrable by delivery. When the notice was given, therefore, the contractor stood in the same relation

to the material man as though it₀ had previously paid the subcontractor in money every farthing due under the contract. We cannot assume that such bonds remained in the hands of Howland any more than money or a bill of exchange. How, then, can the Courts, without resorting to judicial legislation, make the lien of the plaintiff, as material man, exceed the "sum total" of "the amount due the original contractor (or the assignee who, in law, stood in his shoes) on the 19th day of July, 1887, when the plaintiff gave notice? *The Code*, § .1801. And when the notice was required to be given "before the settlement with the contractor" (*The Code*, § 1802), how could the plaintiff claim a lien if the debt had been discharged before the defendant company had learned who was furnishing the pipe?

As against Howland, if he had contracted directly with the plaintiff to furnish pipe to be placed in a private house on his own land, it is admitted that the sale of his land to a third person, before notice of the lien filed, would not have defeated the lien or prevented its relation back under sections 1781 to 1800. This is the only point settled in *Burr* v. *Maultsby*, 99 N. C., 263, which is cited to sustain the opinion of the Court. Neither in that case, nor in any other heretofore decided by this Court, has it been held that the responsibility of a contractor for material furnished a subcontractor extended beyond his indebtedness, when he received notice of the claim of the material man or attached at all to his property, when notice was given after settlement with the subcontractor.

Secret liens have never been favored by the law, and nothing but the clearest expression of the legislative purpose should be construed to extend their operation in derogation of common law and common right. Jones on Liens, sections 170, 1854, 1856. It is conceded that the intent of the Legislature to give to mechanics, as original contractors, a lien which may have relation back and affect the rights of subse-

quent purchasers, is clearly expressed in the statute, and that material men dealing with owners of land, on which improvements are made, come within its provisions. But in the face of the express provision of the statute that the subcontractor's lien shall not relate back behind the notice, I do not concede the authority of the Courts to create another lien not contemplated by the Legislature. The general, almost universal, construction of similar statutes elsewhere has been that a subcontractor has no lien until "service of notice," and then only to the extent of the unpaid balance due to the contractor, and that upon service of notice the lien of a subcontractor does not relate back so as to defeat intervening rights growing out of conveyances of land by the owner, or attachment of the debt due the original contractor. 15 Am. and Eng. Enc., 95, 97, note 5; *Cohoon* v. *Levy*, 6 Cal., 295; *Brown* v. *Marsh*, 10 Cal., 435; *Schneider* v. *Hobrin*, 41 How. Pr. (N. Y.), 236; *McNeal Pipe & F. Co.* v. *Bullock*, 38 Fed. Rep., 585. Under the provisions of our statute (*The Code*, §§ 1801 and 1802), the material man who deals with the original contractor is treated for all purposes as a subcontractor, and in express terms is given the same remedy. Before the lien was filed or any notice given to it, the Water Company, in ignorance of the existence of the contract between plaintiffs and Howland, indeed not knowing from whom he had bought the pipe and castings, delivered to him, in discharge of their liability to him, negotiable bonds of the company secured by a mortgage on its franchise, property and rights to the full amount of his debt. Howland held $5,000 in these negotiable bonds when the lien was filed, but they had passed beyond the control of the Water Company. The manifest meaning of the statute (section 1801) is that the contractor shall be answerable at his peril to the material man for every dollar paid the subcontracter after notice of the lien; but the effect of a payment in negotiable bonds is the same as a payment in money, in that

the bonds cannot be recalled. The debt is no longer one growing directly out of the contract to finish the reservoir and ditches; but it is founded upon a distinct agreement to pay interest on these bonds for a given number of years, and the principal at maturity is secured by the conveyance of the franchise, etc., to a trust company in New York. Whether the plaintiffs could have reached these bonds and subjected them as property of Howland when the lien was filed, it is not necessary to determine. For present purposes it is only necessary to say that the notice came too late for the Water Company to protect the plaintiffs by withholding a payment still due, as was contemplated by the statute. I conclude, therefore, that the lien could not relate back prior to July 19, 1887, when notice was served.

But I maintain further, that if it be admitted that, ordinarily, where the rights of individuals only are involved, the Legislature intended to create a secret lien in favor of subcontractors or material men who deal directly with them, still, unless the Legislature has explicitly so declared, property devoted to the use of the State, or conveyed for corporate purposes to a public corporation, such as a town, or a company organized to furnish water to a town, is not subject to such secret lien. We will search in vain in our statute law for any such expression of such legislative intent.

" In the absence of special statutory provision on the subject, it would seem," says Judge Dillon (2 Mun. Corp., 576 [446] ) " to be a sound view to hold that the right to contract and the power to be sued gives the creditors a right to recover judgments, that the judgments should be enforcible by execution against the strictly private property of the corporation, but not against any property owned *or used* by the corporation for public purposes, such as public buildings, hospitals and cemeteries, fire engines and apparatus, *waterworks* and the like, and that the *judgments should not be deemed liens upon real property except when it may be taken in execution.*"

Freeman, in his work on Executions (sec. 126), also sustains the view that property *held or used for the public or governmental purposes of a municipal corporation is not subject to execution.* Both Freeman and Dillon agree that "*buildings* which cannot be sold under an execution cannot be sold on foreclosure of a mechanic's lien," and that "it is only such property as can be sold under judicial process that is subject to such lien." 2 Dillon, sec. 577 ; 1 Freeman on Ex , sec. 126 ; *Bass* v. *Navigation Company, ante,* 439. In the case of *Foster* v. *Fowler,* 60 Pa. St., 27, which is cited with approval both by Dillon and Freeman, the Court held that a water company, formed for the purpose of supplying a town with water, was a public corporation, and its buildings necessary for carrying on its operations were not subject to a mechanic's lien, and the doctrine finds support in many other decisions, and is approved by discriminating text-writers. 2 Jones on Liens, sec. 1378, note 2; Phillips on Mechanic's Liens, sec. 1804, note 1; *Commissioners* v. *Torney,* 115 U. S., 122. The trend of our own decisions has been in the same direction in recognizing the principle upon which the authorities cited rest. *Hughes* v. *Commissioners,* 107 N. C., 602 ; *Gooch* v. *McGee,* 83 N. C., 64. A direct authority, in which it seems the same plantiff brought an action under a similar statute of the State of Alabama, is to be found in *Pipe & F. Co.* v *Bullock, supra,* in which the Circuit Court of Alabama held that pipes furnished by contractors in constructing city water-works for a water company, did not constitute a lien upon its property, and that the plaintiff could not recover anything beyond the amount due from the contractor to the subcontractor when notice was given of the lien.

The town of Durham, though not a party to this action, cannot afford to be an indifferent observer, if the plaintiff should succeed in making good some of its demands. But whether the municipality is before the Court or not, we must take notice of the admitted facts that the reservoir and land

upon which it is situate, together with ditches, pipes and castings, were being used for supplying water for public purposes in the town, and that the property cannot be sold without interfering with the conveniences of the municipality, and embarrassing it in the exercise of its governmental duties. The fact that this property is used for the town is sufficient to exempt it from sale under execution except as incident to a franchise, under which a purchaser might step into the shoes of a corporation and discharge its functions, when he could not accomplish that end as the individual owner of the reservoir, or of the easement in the ditches or of the pipes. 2 Dillon, *supra;* Freeman, *supra*, 115 U. S., *supra*. Leaving the town out of view, the Water-works Company is a public corporation, and in the language cited by Chief Justice SMITH in *Gooch* v. *McGee, supra*, " as to land which has been appropriated to its corporate objects and is necessary for the full enjoyment and exercise of any franchise of the company, whether acquired by purchase or the exercise of the delegated power of eminent domain, the company holds it entirely exempt from levy and sale, and this on the ground of prerogative or corporative immunity; for the company can no more alien or transfer such land by their own act than a creditor by legal process, but the exemption rests on the public interests involved in the corporation." *Gooch* v. *McGee, supra; Railroad* v. *Caldwell*, 39 Pa., 337; *Gore* v. *Tide-water Company*, 24 Howard U. S., 263; Jones, *supra*, section 180. It is clear that the current of authorities is in favor of the doctrine that in the absence of statutory provision, neither the property nor the franchise of a public corporation is subject to sale under execution upon the same principle that exempts a public square on which a court-house is built. For a review of cases, see discussion by Freeman in Note 15, Am. Dec., 595. It was this concensus of opinion which led the Court, in *Gooch* v. *McGee, supra*, to question the soundness of the principle laid down in *State* v.

*Rives,* 5 Ired., 297, and to declare, in effect, that but for the enactment of our statute (*The Code,* §§ 671 to 678) neither the property nor the franchise of a public corporation could be sold. *Bass* v. *Navigation Company, supra.*

The first contention of the plaintiff is that though the defendant company could sell nothing but the franchise, an individual, where he has induced a city to give an easement in its streets and other privileges by agreeing to devote a reservoir and land on which it is constructed, with the pipes laid in ditches, to the purpose of supplying the town with water, could subsequently subject said land and piping, as distinct property, to a lien filed after the works were in operation by a manufacturer who furnished the pipe. No matter, therefore, what expense a municipality might incur in procuring water, if it deal with an individual instead of a corporate contractor, the public would be left dependent upon the solvency or honesty of the contractor, because separate sales of the land on which the reservoir is located, and the other property, would necessitate new arrangements for a water supply. Is it possible for a city to provide for the wants of its citizens and the protection of the public against fire, without organizing a corporation as a contractor or incurring the risk of failure and disappointment? It appears as a fact in this case that the plaintiff had notice of the purpose for which the pipes and castings were to be used. Plaintiff knew that the land bought for the reservoir was held and used for the purposes of a public corporation acting for the people in its governmental capacity under an agreement with Howland. They should therefore have looked more closely to their security, certainly when the contractor made default in paying monthly according to his agreement, though it is not incumbent on the Courts to point out how the debt could have been secured. This case presents a widely different state of facts, as already intimated, and questions of law easily distinguishable from those passed upon in *Burr* v.

*Maultsby,* 99 N. C., 263, and the class of cases to which it belongs. The contesting parties in those cases were individuals, between whom the original lien law (*The Code,* § 1781 to 1800) was intended to operate and to relate back to the time of beginning the work or furnishing the material. But a city, when it engages in the work of supplying its inhabitants with water and furnishes it for the purpose of protecting public buildings, such as the court-house and jail, as well as private houses, as was provided in the contract in this case, is an authorized agent of the sovereign State, clothed with authority to aid in the discharge of this governmental duty to the people. *United States* v. *Railroad Co.,* 17 Wall., 328; *Hughes* v. *Commissioners, supra; Kluin* v. *New Orleans,* 99 U. S., 149; Cooley Const. Lim., 655, 656.

At the time when the plaintiff agreed to furnish Howland the piping, they knew that it was to be used in fulfilling the contract with the municipal corporation, and they knew that the land on which the reservoir is located was to be used for the purpose to which it was devoted. If the State of North Carolina had authorized the Governor to contract with a person or corporate body for a supply of water for the protection of public buildings in Raleigh, and incidentally for the use and protection of the people of the whole city, would it be contended that the piece of land covered in part by the ponded water, and on which the reservoir and the pumps for throwing the water into it are located, would be at all times subject to be sold separately from the privileges, to satisfy judgments for debts of the individual contractor, when, if the contractor had been a body corporate, the principle announced in *Gooch* v. *McGee, supra,* would have protected it from every species of liens upon its land or other property, except as incident to a lien upon the franchise? It would not be contended that Burke Square, upon which the Governor's Mansion was completed less than three years ago, could be sold to satisfy the lien of one who furnished material for the Mansion to a contractor

who was working upon it—such, for instance, as the pipe
furnished by the manufacturer to the plumber for conduct-
ing gas or water through the building.   Yet the protection
extended to corporations, acting for the State in the exercise
of delegated power, is founded upon the idea that they are
agents, like attorneys in fact, entitled to all the rights that
the law gives to the principal.

If the lien did not attach to the reservoir, or land, or piping,
or right to lay it in the ditches, as separate and distinct
pieces of property belonging to Howland, so as to subject
each to sale separately, it is clear that it could not attach to
the franchise of the Water Company.   So soon as that com-
pany bought from Howland, and he assigned his contract
with the city to it, on January 1, 1887, he entered into an
agreement with the purchasing company to finish the work,
and, as to all labor done and material furnished subsequently,
was a subcontractor.   I cannot, for the reasons given, con-
cur in the position maintained by the late Chief Justice, and
adopted by the Court, that the land acquired by Howland
for a reservoir and the right-of-way for piping over the land
of private persons is subject to the lien and liable to be sold
to satisfy the plaintiff's judgment.   I see no difference in
principle between allowing the lien on the right-of-way in
the streets of the town and on the connecting piping and
reservoir outside of its limits, on which the people are
dependent for their supply of water.

But while giving its sanction to the argument of the late
Chief Justice, that a piece of land bought by a private indi-
vidual and used for a site for a reservoir to furnish a supply
of water to the State capitol under a contract with the State,
would be subject to the lien of a material man dealing with
such individual, and liable to be sold to satisfy his claim, I
understand that the Court now add the suggestion that a
better, but not an exclusive remedy would be the sale of the
franchise under section 671 of *The Code*, or the appointment

of a receiver to take charge and devote the net earnings of the corporation to the satisfaction of the claim.

Admitting that the Water-works Company could sell its franchise privately, and that as a company receiving tolls and fares its franchise is subject to sale under execution in accordance with the provisions of the statute, I still maintain that no lien was created on the franchise held by the defendant company by the service of notice by the plaintiff as a material man, after the claim of the subcontractor had been paid in full, and that the defendant company owes no debt for which its earntngs can be taken by a receiver, for the reasons already given.

If a lien was created at all, then, by the express terms of the statute, it attached not to the franchise, but to the "house and real estate" on which the material was used. How, then, can this Court, in order to give adequate redress for the plaintiff, attach the lien, in derogation of common right, to the company's franchise for the security of Howland's debt?