**In the Matter of James C. HAITHCOCK, Bankrupt.**
**No. 21–57.**

United States District Court
M. D. North Carolina.
Sept. 18, 1958.

Lassiter, Leager & Walker, Raleigh, N. C., for Raleigh Savings and Loan Ass'n, and Charles H. Young and A. L. Purrington, Jr., Trustees for Raleigh Savings and Loan Ass'n.

White & White, Durham, N. C., for S. Ray Byerly, Trustee for James C. Haithcock, Bankrupt.

Gavin, Jackson & Gavin, Sanford, N. C., for James C. Haithcock.

STANLEY, District Judge.

This matter comes before the court on the petition of Raleigh Savings and Loan Association and Charles H. Young and A. L. Purrington, Jr., Trustees for Raleigh Savings and Loan Association, for review of the findings and order of the Referee in Bankruptcy denying an alleged claim of the petitioners in the amount of $10,403.88. Exception is also taken to the order of the referee denying a motion by- Raleigh Savings and Loan Association to amend its claim as originally filed, and in denying the petition of said association for delay in entering the discharge of the bankrupt.

James C. Haithcock was adjudged a bankrupt on July 17, 1957, as the result of an involuntary petition filed on July 3, 1957.

The essential facts are not in serious dispute.

The wife of the bankrupt owned a tract of land in Garner, near Raleigh, in Wake County, North Carolina. In June and July of 1950, the bankrupt and his wife entered into contracts for the construction of a store building and dwelling on the property. On September 28, 1950, the Raleigh Savings and Loan Association hereinafter referred to as the "Association", loaned to the bankrupt and his wife the sum of $18,000 taking as security for the payment thereof a deed of trust on the land upon which the store and dwelling were being constructed. The deed of trust recited that the land was free and clear of all liens and encumbrances, and, shortly before the proceeds of the loan were disbursed, the bankrupt gave the Association an affidavit to the effect that all bills for labor and material had been paid in full.

During the latter part of 1952, the bankrupt and his wife became delinquent on their payments to the Association, and in January, 1953, the Association requested the trustees in the deed of trust to foreclose the property. Prior to the foreclosure, and on or about March 20, 1951, J. T. Lowery, Jr., who had entered into a cost-plus contract with the bankrupt and his wife for the construction of the buildings, filed in the office of the Clerk of Superior Court of Wake County a declaration of his claim of a laborer's and materialman's lien. The Association was aware of the assertion of the lien by Lowery prior to the foreclosure, and announced at the foreclosure sale that the lien was being asserted against the property but that it was being contested.

At the foreclosure sale, the Association purchased the property for $17,250.

In the meantime, and prior to the foreclosure sale, the Association had, on its

own motion, been made an additional party defendant in an action brought in the Superior Court of Wake County by J. T. Lowery, Jr. against the bankrupt and his wife to perfect his lien. At the March, 1953, term of Superior Court of Wake County, a judgment was entered in said action in favor of Lowery, which provided for the recovery of $8,530.99, plus interest, and also provided that the said sum constituted a valid and subsisting lien against the property in question prior to the lien of the Association. The Association excepted to the entry of the judgment and appealed to the Supreme Court of North Carolina. The judgment of the Superior Court was affirmed by the Supreme Court, except it was held that Lowery was entitled to a lien in the amount of $7,340.30, with interest. This decision is reported as Lowery v. Haithcock, 1953, 239 N.C. 67, 79 S.E.2d 204.

In February, 1954, the Association paid the full value of this judgment, and same was transferred and assigned by Lowery to Charles H. Young and A. L. Purrington, Jr., as trustees for the Association. This judgment is the basis of the claim filed by the Association.

The referee concluded that under these facts the Association was required by the laws of the State of North Carolina to satisfy the judgment from the real estate upon which it was a specific lien, and denied the claim.

■■ The determination by the referee that the claim of the Association should be denied was based upon a conclusion of law. Therefore, this court is free to make its own determination of the correctness of the referee's finding. The rule that findings of fact by a referee should not be reversed unless clearly erroneous is not applicable to his conclusions of law. Walker v. Commercial National Bank of Little Rock, 8 Cir., 1954, 217 F.2d 677.

Sections 44–46, General Statutes of North Carolina, provides as follows:

"Upon judgment rendered in favor of the claimant, an execution for the collection and enforcement thereof shall issue in the same manner as upon other judgments in actions arising on contract for the recovery of money only, except that the execution shall direct the officers to sell the right, title and interest which its owner had in the premises or the crops thereon, at the time of filing notice of the lien, before such execution shall extend to the general property of the defendant."

■ Whether the claim of the Association was properly denied depends upon a construction of the above statute in light of the transactions in this case. No North Carolina case can be found ruling on the exact situation here presented. While the language might be viewed as dicta with reference to the factual situation in this case, the North Carolina Supreme Court has stated in several decisions that the statutory procedure for the enforcement of laborer's and materialman's liens must be strictly followed. In McNeal Pipe & Foundry Co. v. Howland, 1892, 111 N.C. 615, 16 S.E. 857, 859, 20 L.R.A. 743, the court said:

"The debt so contracted becomes a lien,—a charge upon the land; and that land may, if need be, be sold, or in some appropriate way applied to the payment of the debt secured by, and constituting the ground of, the lien. It makes no difference as to the ownership of the land, if the debt for such considerations was lawfully contracted, because the land is benefited by the labor so done on or about it, or by the materials furnished.

\* \* \* \* \* \*

"The statute \* \* \* prescribes how the plaintiff might enforce his lien. Upon his judgment he is entitled to have execution against the property, 'which shall direct the officer to sell the right, title, and interest which the owner had in the premises, or the crops thereon, at the time of filing notice of the lien, before such execution shall extend to the general property of the defendant.' The property to which the lien attaches is specially devoted to

the satisfaction of the plaintiff's debt, and hence it must be sold before his other property may be resorted to for the like purpose."

In National Surety Corp. v. Sharpe, 1952, 236 N.C. 35, 72 S.E.2d 109, 122, the Supreme Court of North Carolina, in discussing the provisions of G.S. § 44–46, stated:

"When the contractor perfects such inchoate lien in compliance with the requirements of Article 8 of Chapter 44 of the General Statutes, the resulting judgment creates this two-fold lien: (1) A special lien on the building and the lot upon which it is situated; and (2) a general lien on the other real property of the owner in the county where the judgment is docketed. Under the controlling statute, the property subject to the special lien, i. e., *the building and lot on which it is situated, must be sold for the satisfaction of the judgment before resort can be had to the other property of the owner.* G.S. § 44–46". (Emphasis supplied.)

In line with the above and similar decisions of the Supreme Court of North Carolina, the trustee in bankruptcy contends that the statute applicable to the enforcement of laborer's and materialman's liens must be followed strictly, and that the Association, having failed to proceed against the property subject to the lien, cannot make claim against the general assets of the bankrupt. The Association contends, however, that the bankrupt is estopped from asserting the statutory procedure under G.S. § 44–46 because of the warranty against encumbrances contained in the deed of trust given to it by the bankrupt and his wife, and because of the affidavit the bankrupt gave to the effect that all bills for labor and material had been paid in full.

First, it should be pointed out that if the Association should prevail at all under a rule of estoppel, it must be an estoppel by deed, since there is no evidence of any fraudulent conduct or intentional misrepresentations by the bankrupt. The lien asserted by Lowery was based on a contract between Lowery and the bankrupt. The amount claimed represented a disputed interpretation of the contract between Lowery and the bankrupt, which was resolved in favor of Lowery. The fact that the courts resolved the claim against the bankrupt does not refute the fact that there was a valid dispute between the bankrupt and Lowery. Indeed, the Association recognized that a valid dispute existed by a voluntary participation in the defense of the action, and by appealing to the Supreme Court of North Carolina.

The Association cites several North Carolina cases in support of its theory that an estoppel by deed should operate against the trustee. It does not appear, however, that any of these cases are analogous to the situation here presented. For example the facts in both Bechtel v. Bohannon, 1930, 198 N.C. 730, 153 S.E. 316 and Tripp v. Langston, 1940, 218 N. C. 295, 10 S.E.2d 916, show the language of the court was being applied to a situation where a party holding a lien or note on property conveyed the property by warranty deed to another person and then attempted to assert the encumbrance held on the property. In such cases, an estoppel by deed would certainly apply. Here, however, the trustee is not attempting to assert any right against the property, but is only contending that if the Association wishes to recover on its judgment against the property, it must follow the statutory procedure. In order to justify a departure from a strict construction of the statute, in the absence of any pronouncement of the North Carolina Supreme Court on the point, there must exist equities in favor of the party seeking to void the procedure outlined by the statute. The referee found that there were no special equities existing in favor of the Association, and the record justifies this conclusion. At the time the deed of trust was foreclosed, the Association was aware of the claim that had been filed by Lowery. The fact that such a claim had been filed was announced at the foreclosure sale and could well have

been a factor in enabling the Association to purchase the property at a price less than it would have brought if no claim had been outstanding. The fact that the Association contested the Lowery claim lands credence to the belief that it thought the claim would not be held valid.

The Association was able to sell the property in 1955 for $25,000. If the Lowery claim had been held invalid, the Association would have profited from the foreclosure to the extent of several thousand dollars. Since there is no evidence that the bankrupt acted fraudulently when the deed of trust and affidavit were given to the Association, the referee must be upheld in his finding that there are no special equities existing in favor of the Association.

■ The Association had the judgment of Lowery assigned to trustees for its benefit, and stands in the same position Lowery stood in regard to the method of enforcement of the judgment. The Association contends that there are exceptions to the general rule that an assignee acquires no greater rights than the assignor. In view of the facts found by the referee, all of which seem to be supported by the record, there is no reasonable basis for holding that the Association is permitted to deviate from the statutory procedure provided for the enforcement of its judgment.

■ The exception of the Association to the order of the referee in denying its motion to amend its proof of claim, and in denying its petition for delay in entering the discharge of the bankrupt, are without sufficient merit to require discussion. From a careful reading of the amended claim, it is obvious that the Association was attempting to recover upon a new theory and a new cause of action. The time for filing claims having expired, the referee was bound to deny the motion. Since the claim of the Association against the bankrupt has been disallowed, there is no basis for delaying the discharge.

For the reasons given above, the order of the referee is affirmed.